# IN THE SUPREME COURT OF IOWA

No. 10–0193

Filed July 16, 2010

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**WILLIAM RAY MONROE,**

Respondent.

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

Grievance commission recommends thirty-day suspension of respondent's license to practice law. **LICENSE SUSPENDED.**

Charles L. Harrington and Elizabeth E. Quinlan, Des Moines, for complainant.

William R. Monroe, Burlington, pro se.

**TERNUS, Chief Justice.**

The complainant, Iowa Supreme Court Attorney Disciplinary Board, filed charges against the respondent, William Monroe, alleging he engaged in a sexual relationship with a client in violation of the Iowa Rules of Professional Conduct. After a hearing before a division of the Grievance Commission of the Supreme Court of Iowa, the commission found the alleged misconduct had occurred, and this misconduct violated the respondent's ethical duties as an Iowa lawyer. The commission recommended a thirty-day suspension of the respondent's license to practice law.

Upon our review of the record in this case, as well as the commission's report, we agree with the commission's findings of fact and with its legal conclusion Monroe's sexual relationship with his client violated Iowa Rule of Professional Conduct 32:1.8(j). We disagree, however, with the commission's conclusion Monroe's conduct was prejudicial to the administration of justice in violation of Iowa Rule of Professional Conduct 32:8.4(d). More specifically, we reject the board's position that a sexual relationship between attorney and client automatically prejudices the administration of justice, requiring instead that there be proof the relationship actually hampered the proper functioning of the court system. Notwithstanding our contrary conclusion with respect to a violation of rule 32:8.4(d), we concur in the commission's recommended sanction and suspend the law license of William Monroe for thirty days.

## I. Prior Proceedings.

On July 14, 2009, the board filed an amended complaint against William Monroe alleging that in 2007 Monroe entered an appearance for Jane Doe in a dissolution-of-marriage action and thereafter began a sexual relationship with her. The board further alleged Monroe represented Doe in some criminal matters, including a charge of public intoxication, while they

continued to be intimately involved. The board charged Monroe with violating rule 32:1.8(j) ("A lawyer shall not have sexual relations with a client . . . unless the person is the spouse of the lawyer or the sexual relationship predates the initiation of the client-lawyer relationship."), and rule 32:8.4(d) ("It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice.").[1] Monroe admitted the board's factual allegations, with the qualification that "the [sexual] relationship was established before the public intoxication case began." He also admitted this conduct violated rule 32:1.8(j). As for the alleged violation of rule 32:8.4(d), Monroe stated: "Admits that violating Rule 32:1.8(j) is per se prejudicial to the administration of justice. Denies that any other actions of Respondent on behalf of Jane Doe, the victim in this case, were prejudicial to the administration of justice." (Footnote omitted.)

At the hearing before a division of the grievance commission, the division chair urged the parties to focus their evidence on an appropriate sanction in view of Monroe's admission of the operative facts and the ethical violations. Notwithstanding Monroe's limited admission to a violation of rule 32:8.4(d), restricting it to a "per se" violation of the rule, the board did not challenge the commission's view of the narrow purpose of the hearing. Similarly, in its report to this court, the commission accepted Monroe's concession that his conduct violated rule 32:1.8(j) and rule 32:8.4(d) and made no additional finding that the board proved a violation of rule 32:8.4(d) beyond the per se violation that Monroe admitted.

---

[1]Based on Monroe's alleged violation of rule 32:1.8(j), the board also charged Monroe with a violation of Iowa Rule of Professional Conduct 32:8.4(a), which states: "It is professional misconduct for a lawyer to . . . violate or attempt to violate the Iowa Rules of Professional Conduct . . . ." As we have recently stated, rule 32:8.4(a) does not provide an independent ground for an ethical infraction when based solely on the *violation* of another rule. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 769 (Iowa 2010). Therefore, we give this claim no further attention.

The commission's report, filed on February 1, 2010, focused on the appropriate sanction for the admitted ethical infractions. The commission noted several factors it considered as aggravating, including Doe's vulnerability, Monroe's initial evasiveness when an opposing attorney questioned his relationship with Doe, Monroe's failure to withdraw from his representation of Doe in the criminal matters despite his withdrawal in the dissolution action, Monroe's injection of himself in the pending dissolution action after his withdrawal, and the resulting harm to Doe. The commission cited the following circumstances it considered mitigating: Monroe's clean disciplinary record, Monroe's service in the Marines, Monroe's extraordinary amount of pro bono work, Monroe's cooperation with the board and during the hearing, and Monroe's acceptance of responsibility for his conduct. In addition to these matters, the commission stated its belief that Monroe "is a naïve person who genuinely wanted to assist Ms. Doe, and that [he] lost sight of the ethical boundaries due to lack of education in the area." The commission recommended Monroe's license to practice law be suspended for thirty days, and suggested he be required to present evidence that he had completed counseling "as to how to identify and avoid relationships with vulnerable people" prior to reinstatement.

## II.  Scope of Review.

We review attorney disciplinary proceedings de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Marzen*, 779 N.W.2d 757, 759 (Iowa 2010). The commission's findings and recommendations are given respectful consideration, but we are not bound by them. *Id.* Nonetheless, we give special weight to the commission's findings concerning the credibility of witnesses. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McGrath*, 713 N.W.2d 682, 695 (Iowa 2006). The board has the burden of proving attorney misconduct by a convincing preponderance of the evidence. *Iowa Supreme*

*Ct. Att'y Disciplinary Bd. v. Johnson*, 774 N.W.2d 496, 497–98 (Iowa 2009). As frequently stated, " 'This burden is less than proof beyond a reasonable doubt, but more than the preponderance standard required in the usual civil case.' " *Id.* at 498 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Conrad*, 723 N.W.2d 791, 792 (Iowa 2006)). Upon proof of misconduct, the court may impose a lesser or greater sanction than that recommended by the commission. *Id.*

### III. Factual Findings.

Monroe was admitted to practice law in Iowa in 1998. In 2007 he was retained by Doe to represent her in a dissolution proceeding that included a child custody issue. Monroe was acquainted with Doe, having represented her in a prior legal matter. In late May 2007, Monroe and Doe commenced a sexual relationship. Monroe continued to represent Doe, and after various misdemeanor criminal charges were filed against Doe in the summer of 2007, Monroe represented her in those matters as well.

The intimate relationship between Monroe and his client ended in mid-August 2007 by mutual agreement. Doe decided she was not interested in having a serious relationship at that time. In addition, they both recognized that their relationship might be detrimental to Doe in the dissolution action and may interfere with Monroe's representation of Doe.

Doe testified at the hearing before the commission, and we find, that she was not coerced by Monroe to engage in an intimate relationship with him, that there was no understanding or anticipation that her attorney fees would be reduced by virtue of their relationship, and that she felt it was her own decision to be in or out of the relationship. Doe harbors no ill will

toward Monroe and continues to regard him as a good friend upon whom she can call in times of need.[2]

Eventually, Doe's husband became aware of his wife's relationship with Monroe. He told his attorney who then reported the situation to the disciplinary authorities in the fall of 2007, resulting in the filing of the charges at issue here.

The attorney representing Doe's husband also contacted the assistant county attorney to share his concerns regarding Monroe's relationship with Doe. The assistant county attorney told Monroe what she had heard and suggested that Monroe should not represent Doe in the criminal matters. Although Monroe withdrew from the dissolution case in early fall 2007, he continued to represent Doe in the criminal matters until they were resolved in October 2007. Even though Monroe no longer represented Doe in the dissolution matter, he periodically injected himself into that case through phone calls to Doe's new attorney regarding suggestions and information pertinent to the dissolution proceeding. After Doe was billed for her new attorney's conversations with Monroe, Doe asked Monroe to refrain from contacting her new attorney.

As previously stated, Monroe admitted in the disciplinary case that he had a sexual relationship with Doe and that his conduct violated rules 32:1.8(j) and 32:8.4(d). Consequently, the hearing before the commission focused on the appropriate sanction for this misconduct. As noted above, after considering various aggravating and mitigating circumstances, the commission recommended a one-month suspension.

---

[2]Doe testified that she and Monroe "were friends before, friends during, and friends after—now."

### IV. Ethical Violations.

**A. Rule 32:1.8(j)—Sexual Relationship with Client.** We conclude Monroe's intimate relationship with his client violated Iowa Rule of Professional Conduct 32:1.8(j). Monroe seems to suggest in his answer that his relationship with Doe was not improper with respect to the public intoxication case because their intimate relationship predated his representation of her on that matter. This suggestion indicates Monroe may misperceive the charges against him. Monroe was not charged with an ethical violation based on his representation of Doe after their intimate relationship began. The ethical charges against him were based solely on the fact he had a sexual relationship with his client, and the board relied on Monroe's continuing representation of Doe only as an aggravating circumstance. Consequently, whether Monroe's continuing representation of Doe was itself ethical misconduct is not at issue here. Nonetheless, we will address the impact of his continued representation on the charge that was made by the board, that Monroe's sexual relationship with Doe violated rule 32:1.8(j).

Monroe's sexual relationship with his client was not legitimized once he withdrew from representing her in the dissolution matter. Rule 32:1.8(j) provides: "A lawyer shall not have sexual relations with a client . . . unless the person is the spouse of the lawyer or the sexual relationship predates the *initiation* of the client-lawyer relationship." (Emphasis added.) Monroe's client-lawyer relationship with Doe commenced in the spring of 2007. He did not have sexual relations with her until late May 2007. Therefore, the rule's exception for sexual relationships that predate the client-lawyer relationship does not apply here. Monroe's intimate relationship with Doe violated rule 32:1.8(j) for the entire period it existed because their client-

lawyer relationship predated their sexual relationship and Doe continued to be his client during the time they were intimately involved.

**B. Rule 32:8.4(d)—Conduct Prejudicial to the Administration of Justice.** "Whether conduct is prejudicial to the administration of justice is not subject to a precise test." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Buchanan*, 757 N.W.2d 251, 255 (Iowa 2008). "Generally, acts that have been deemed prejudicial to the administration of justice have 'hampered the efficient and proper operation of the courts or of ancillary systems upon which the courts rely.'" *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Borth*, 728 N.W.2d 205, 211 (Iowa 2007) (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Steffes*, 588 N.W.2d 121, 123 (Iowa 1999)). Based on these principles, we reject the proposition that a sexual relationship between client and attorney is a per se violation of rule 32:8.4(d).

The prohibition of sexual relationships between client and attorney rests on the belief that a conflict between the client's interest and the attorney's personal interests is inherent in such situations. *See* Iowa R. Prof'l Conduct 32:1.8 (entitled "Conflict of interest: current clients: specific rules"); 1 Geoffrey C. Hazard, Jr., et al., *The Law of Lawyering* § 12.2, at 12–8 (3d ed. 2004 Supp.) [hereinafter "*The Law of Lawyering*"] (noting rule regarding sexual relationships regulates "a troubling situation implicating conflict of interest concerns"). The proposition that a sexual relationship between client and attorney is a per se violation of rule 32:8.4(d) would necessarily rest on a similar belief: that an intimate relationship between client and attorney automatically prejudices the administration of justice. There are at least two flaws in this reasoning.

First, rule 32:8.4(d) does not prohibit a particular act or conduct in isolation. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 768–69 (Iowa 2010). It prohibits conduct that has an

undesirable *effect*: prejudice to the administration of justice, i.e., some interference with the efficient and proper operation of the courts through a deviation "from the well-understood norms and conventions of practice." *Id.* at 769. *See generally* 2 *The Law of Lawyering* § 65.6, at 65–15 (3d ed. 2009 Supp.) (noting with disapproval that some courts have applied rule 8.4(d) "to conduct that, while reprehensible, seems quite far from prejudicing the 'administration' of any particular proceeding or of 'justice' generally"). Clearly, a client-attorney relationship compromised by a concurrent intimate relationship could prompt acts or omissions by the attorney or client that would impede the proper functioning of the court system for purposes of the client's case. Nonetheless, we think such a result is not inevitable, as the subject of many client-attorney relationships does not involve court proceedings at all.

The second reason we think a violation of rule 32:1.8(j) does not result in a per se violation of rule 32:8.4(d) is the inconsistency between this conclusion and our allowance of exceptions to the prohibition of sexual relationships between client and attorney. If sexual relationships between client and attorney always compromise the administration of justice, there would be no sound basis for allowing a client-attorney relationship to exist between spouses or for accommodating a client-attorney relationship when the sexual relationship predates the client-attorney relationship. Moreover, if sexual relationships between client and attorney automatically prejudice the administration of justice, an attorney relying on the rule 32:1.8(j) exceptions as a safe harbor would find their protection illusory because he or she would still face charges under rule 32:8.4(d), which does not contain comparable exceptions.

The commission accepted Monroe's admission that his violation of rule 32:1.8(j) is "per se prejudicial to the administration of justice." For the

reasons we have discussed, we do not. As noted, the board was satisfied to rely on Monroe's admission and did not seek to prove specific ways in which this relationship "hampered the efficient and proper operation of the courts or of ancillary systems upon which the courts rely." *Steffes*, 588 N.W.2d at 123. We conclude, therefore, that the board has failed to prove a violation of rule 32:8.4(d). This conclusion does not, however, preclude consideration of the effects of Monroe's misconduct on his representation of Doe in determining the appropriate sanction, a matter we now address.

### V. Sanction.

"There is no standard sanction for a particular type of misconduct, and though prior cases can be instructive, we ultimately determine an appropriate sanction based on the particular circumstances of each case." *Johnson*, 774 N.W.2d at 499. In determining a suitable sanction for an attorney's ethical violations,

> we consider the nature and extent of the respondent's ethical infractions, his fitness to continue practicing law, our obligation to protect the public from further harm by the respondent, the need to deter other attorneys from engaging in similar misconduct, our desire to maintain the reputation of the bar as a whole, and any aggravating or mitigating circumstances.

*Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Kallsen*, 670 N.W.2d 161, 164 (Iowa 2003). We think two of these considerations mandate a suspension here: the nature of the ethical infraction and the need to deter other attorneys from engaging in similar misconduct.

Monroe had a sexual relationship with his client that spanned several weeks. *Cf. Comm. on Prof'l Ethics & Conduct v. Durham*, 279 N.W.2d 280, 285–86 (Iowa 1979) (publicly reprimanding attorney who had inappropriate physical contact with client during prison visit with client). There is no gray area with respect to the prohibition of such conduct, no nuance subject to differing interpretations. *See Marzen*, 779 N.W.2d at 767 ("Our ethics rules

are clear, and our cases have consistently and explicitly condemned sexual relationships between an attorney and a client."); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Furlong*, 625 N.W.2d 711, 714 (Iowa 2001) ("Professional responsibility involves many gray areas, but sexual relationships between attorney and client is not one of these."). Therefore, the ethical violation is obvious and should have been obvious to Monroe before he engaged in sex with his client.

This type of misconduct also clearly jeopardizes the client's interests. *See* Iowa R. Prof'l Conduct 32:1.8(j) cmt. [17] (discussing dangers posed by attorney's sexual relationship with client). The fact that the misconduct occurred while Monroe represented Doe in a dissolution action and in criminal matters is an aggravating circumstance because clients are particularly vulnerable under these circumstances, and the possibility of harm, especially when child custody matters are at stake, is high.[3] *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Morrison*, 727 N.W.2d 115, 118 (Iowa 2007) (stating "a sexual relationship between attorney and client may be harmful to the client's interest," particularly when client is dealing with a divorce or criminal charges); 1 Restatement (Third) of the Law Governing Lawyers § 16, cmt. *e* (1998) ("A lawyer may not . . . enter a sexual relationship with a client when that would undermine a client's case, abuse the client's dependence on the lawyer, or create risk to the lawyer's independent judgment, for example, when the lawyer represents the client in a divorce proceeding."). Moreover, Monroe failed to recognize the potential for harm as evidenced by his continuing representation of Doe after their sexual relationship commenced. Finally, Doe suffered from situational

---

[3]We note there was no proof Monroe's sexual relationship with Doe impacted the child custody dispute between Doe and her husband. The board merely argues "the relationship *could have had* negative repercussions on Ms. Doe's custody of her child." (Emphasis added.)

depression in reaction to her marital situation, further affecting her capacity to make good choices for herself.[4] It is important to deter other attorneys in similar circumstances from putting their own self-interest ahead of those of the client, the very antithesis of a lawyer's professional duty.

On the other hand, the situation presented by the facts of this case is less egregious than we have encountered with respect to other violations of rule 32:1.8(j). *See, e.g., Marzen,* 779 N.W.2d at 768–69 (finding attorney's sexual relationship with extremely vulnerable client, whom he represented in an involuntary commitment proceeding, warranted six-month suspension); *Morrison,* 727 N.W.2d at 119–20 (imposing three-month suspension on attorney who engaged in sexual relationship with client after he had been previously admonished for making sexual advances toward another client); *McGrath,* 713 N.W.2d at 703–04 (concluding three-year suspension was warranted for attorney who preyed upon dissolution client's vulnerability by obtaining sex in exchange for legal services and who had attempted to do so with another dissolution client); *Furlong,* 625 N.W.2d at 713–14 (imposing eighteen-month suspension on attorney who performed "uninvited and unwelcome" sex acts on client and sexually harassed at least two other clients by making unwanted sexually motivated physical contact with them). In the present case, the misconduct appears to be an isolated occurrence, there being no evidence that Monroe had engaged in similar transgressions in the past. In addition, Monroe's conduct was not predatory, Doe felt she entered the relationship voluntarily and that Monroe had not taken advantage of her, and Doe has seemingly suffered no emotional harm from

---

[4]Doe had been treated in the past for other mental health problems, but there is no evidence these past problems were active at the time in question or had any influence on Doe's capacity for good decision-making.

the relationship.[5] We agree with the commission's observation that Monroe "genuinely wanted to assist Ms. Doe, [but] lost sight of the ethical boundaries" governing his relationship with his client. In addition, as the commission noted, Monroe had his own "emotional/personality weaknesses/vulnerabilities."

We also consider Monroe's "fitness to continue practicing law" and "our obligation to protect the public from further harm" by this attorney. *Kallsen*, 670 N.W.2d at 164. Clearly, Monroe needs a better understanding of his ethical obligations, the vulnerability of clients under the stress of a dissolution or facing criminal charges, and the impact a sexual relationship between him and his client has on his client and his own ability to professionally represent that client. Without this knowledge, Monroe poses a risk to the public. We also note, however, that Monroe has contributed a significant amount of time to the representation of clients on a pro bono basis. In addition, members of the bar and of the judiciary testified at the hearing that, other than the matter that brought Monroe to the attention of the disciplinary authorities, he has practiced in an ethical fashion. Taking all of the pertinent factors into consideration, we concur in the commission's recommendation that Monroe's license to practice law in this state be suspended for thirty days.

The commission also recommended that Monroe's license not be reinstated until he has furnished "evidence that he has completed counseling (at his expense), which counseling is focused on [his] current lack of appreciation for how his behavior with Jane Doe was wrong." Shortly

---

[5]Doe was being treated for her situational depression during the time in question, but the board introduced no evidence from Doe or her therapist that Doe's relationship with Monroe adversely affected Doe's mental or emotional state. The only harm shown in the record was attorney fees incurred by Doe that were attributable to Monroe's contact with Doe's new attorney.

before submission of this matter to our court on May 19, 2010, Monroe filed a report from a mental health counselor whom he has been seeing on a weekly basis since February 2010.[6] (Monroe had previously been a client of the same professional when he suffered from depression in 2004.) The counselor stated that she has "identified and processed at length" with Monroe "the issues of unequal power in a relationship with a [p]rofessional," including "the serious repercussions and the risk of harm, both mentally and emotionally, to a client who is in a vulnerable state." The counselor opined that Monroe was keenly aware of the ramifications of such a relationship and had resolved not to let it happen again. She stated she has worked with Monroe to "set up guidelines within his thinking and also within his office to prevent any future reoccurrence."

We are satisfied the May report from Monroe's counselor provides sufficient verification that Monroe has addressed the matters leading to his unethical behavior. Therefore, we decline to require any additional counseling prior to reinstatement. If the board has a basis to challenge the accuracy of the report submitted by Monroe, it has an opportunity to object to Monroe's automatic reinstatement under Iowa Court Rule 35.12(2).

## VI. Disposition.

We suspend Monroe's license to practice law for thirty days. This suspension shall apply to all facets of the practice of law as provided in Iowa Court Rule 35.12(3) and requires notification of clients as outlined in Iowa Court Rule 35.22. Costs are taxed to Monroe pursuant to Iowa Court Rule

---

[6]The board objected to Monroe's late submission of this report. In an order dated March 19, 2010, this court invited the parties to submit statements addressing the propriety of the commission's recommended sanction. These statements were due on May 10, 2010. Because Monroe did not submit his counselor's report by May 10, 2010, we conclude he did not intend that we consider his rehabilitative efforts in determining the appropriate length of any suspension, and we have not done so.

35.26.  Automatic reinstatement shall not be ordered until all costs are paid. Iowa Ct. R. 35.12(2).

**LICENSE SUSPENDED.**