# IN THE SUPREME COURT OF IOWA

No. 10–1288

Filed February 11, 2011

**IOWA SUPREME COURT ATTORNEY
DISCIPLINARY BOARD,**

      Complainant,

vs.

**CLOVIS BOWLES,**

      Respondent.

_____

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

Grievance commission recommends suspension of attorney's license. **LICENSE SUSPENDED.**

Charles L. Harrington and Elizabeth E. Quinlan, Des Moines, for complainant.

Clovis Bowles, Lisbon, pro se.

**HECHT, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board filed a complaint against the respondent, Clovis Bowles, alleging he engaged in a sexual relationship with a client in violation of the Iowa Rules of Professional Conduct. After a hearing, the grievance commission found Bowles' conduct violated several provisions of the Iowa Rules of Professional Conduct and recommended Bowles' license be suspended.

## I. Prior Proceedings.

On August 6, 2010, the board filed a complaint against Bowles alleging he violated Iowa Rules of Professional Conduct 32:1.8(j) (prohibiting sexual relations between a lawyer and client except in circumstances not relevant here), 32:1.14(a) (requiring a lawyer to properly maintain a normal client-lawyer relationship with a client whose capacity to make adequately considered decisions was diminished), 32:8.4(d) (prohibiting conduct that is prejudicial to the administration of justice), and 32:8.4(a) (defining professional misconduct to include any violation of the Iowa Rules of Professional Conduct).[1] After a hearing, a division of the Grievance Commission of the Supreme Court of Iowa found Bowles had committed multiple violations of his ethical duties as an Iowa lawyer. A majority of the commission recommended Bowles' license to practice law be suspended for three years.[2]

---

[1]The board withdrew the charge that the respondent violated rule 32:8.4(a) in view of our decision in *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761 (Iowa 2010). Accordingly, we give no further consideration to this aspect of the charge.

[2]One commission member recommended the revocation of Bowles' license to practice law.

## II. Scope of Review.

We review disciplinary proceedings de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Marzen*, 779 N.W.2d 757, 759 (Iowa 2010). We give respectful consideration to the findings and recommendations of the commission, but we are not bound by them. *Id.* This court gives special weight to the commission's findings concerning the credibility of witnesses. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McGrath*, 713 N.W.2d 682, 695 (Iowa 2006). It is the board's burden to prove attorney misconduct by a convincing preponderance of the evidence. *Id.* "This burden is less than proof beyond a reasonable doubt, but more than the preponderance standard required in the usual civil case." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lett*, 674 N.W.2d 139, 142 (Iowa 2004). If this court finds the board has proven misconduct, we may impose a lesser or greater sanction than that recommended by the commission. *Id.*

## III. Factual Findings.

Upon our review of the record in this case, we make the following findings of fact. In August of 2007, Bowles met with a woman ("the client") and her male friend in his law office. The client revealed she had been discharged that day from a mental health facility where she had been treated after a recent suicide attempt. Her three children had been removed from her custody following an investigation by the Iowa Department of Human Services, and she sought Bowles' professional services in the related juvenile court proceedings.

Bowles agreed to represent the client and scheduled a second meeting a few days later in his office. On this occasion, the client came alone. While discussing the removal of her children, the client became emotional. During the conversation about the client's fitness as a

parent, they discussed her history as a prostitute and her abuse of crack cocaine and alcohol. Bowles asked if he could kiss her. They embraced and had sexual relations in Bowles' office on that occasion.

Bowles had sex with the client on subsequent occasions while he represented her. However, both the lawyer-client and the personal relationship between Bowles and the client soon broke down. The client filed a complaint with the Iowa Supreme Court Disciplinary Board on September 10, 2007, alleging Bowles had engaged in ethical misconduct when he engaged in sex acts with her in his law office and at her home. She retained new counsel.

When the board requested him to respond to the complaint, Bowles denied the allegation of a sexual relationship with the client. In his defense, he relied in part on an affidavit executed by the client falsely denying she had engaged in sexual relations with him. The affidavit, which Bowles knew to be false, was prepared with his assistance and signed by the client before a notary public.

Bowles and the client renewed their personal relationship after the ethical complaint was filed. Believing her chances of regaining the custody of her children would be improved if she were married to an attorney, the client married Bowles on October 1, 2007. The détente was short-lived though, as the marriage was dissolved on November 14, 2007.

The client's legal problems continued, however, and she contacted Bowles requesting his professional assistance in defending against a pending contempt charge. Bowles agreed to meet with the client at the Black Hawk County courthouse on January 24, 2008, to discuss the matter. The two went to the courthouse library. Bowles admits he grabbed the client's buttocks as she entered the library. Believing it

would induce Bowles to represent her the next day at a hearing on the contempt charge, the client began to perform oral sex on him. An unidentified third party entered the room and interrupted the sex act.

Later the same day, Bowles approached a district court judge and requested to speak to him. He appeared to be emotionally upset at the time and admitted he had engaged in a sex act with a client in the courthouse earlier that day. The judge told Bowles to report his ethical misconduct to the board, advised him to seek legal counsel and mental health treatment, and cautioned him against further representation of the client under the circumstances. Ignoring the judge's admonitions, Bowles appeared in court the next day with the client and made legal arguments on her behalf.

Although he persisted in his denial of the sexual relationship prior to the hearing before the commission, Bowles admitted at the hearing that he had sex with the client during the existence of the lawyer-client relationship.

**IV. Ethical Violations.**

**A. Rule 32:1.8(j)—Sexual Relationship with Client.** Rule 32:1.8(j) provides: "A lawyer shall not have sexual relations with a client . . . unless the person is the spouse of the lawyer or the sexual relationship predates the initiation of the client-lawyer relationship." Bowles violated this rule when he had sex with the client at his law office and on at least one other occasion when he had sex with the client at her home. After the client filed an ethical complaint and consulted other counsel, Bowles again participated in a sex act in the courthouse library with the client who sought to induce him to represent her in a hearing scheduled for the following day. Bowles appeared in court the next day with the client and made legal arguments on her behalf. We conclude

the clear and convincing evidence establishes Bowles violated this rule by engaging in sexual relations with the client on at least three occasions.

**B. Rule 32:1.14(a)—Representing Client with Diminished Capacity.** Rule 32:1.14 requires lawyers, "as far as reasonably possible, [to] maintain a normal client-lawyer relationship" with a client whose capacity to make adequately considered decisions is diminished. Iowa R. Prof'l Conduct 32:1.14(a). The plain language of this rule addresses the obligation of lawyers to be attentive and responsive to circumstances in which a client's mental or legal capacity is impaired and to take "reasonably necessary protective action, including consulting with individuals or entities that have the ability to take action to protect the client, and, in appropriate cases, seeking the appointment of a guardian ad litem, conservator, or guardian." *Id.* r. 32:1.14(b). Noting the client was in a hospital for mental health treatment following a suicide attempt when she initially called Bowles to schedule a consultation, and noting further that the client had a history of drug and alcohol abuse, was in a depressed state, and was vulnerable when she first engaged in a sex act with Bowles, the commission found the client "suffered from diminished capacity at least at times during the relationship." Although the record amply demonstrates the client had recent mental health difficulties, had a history of drug and alcohol abuse, and was vulnerable and under considerable stress as a consequence of the removal of her children during the time Bowles represented her, we do not believe a clear preponderance of the evidence supports a finding that her ability to make considered decisions was sufficiently impaired to support a conclusion that Bowles violated rule 32:1.14(a).

The record reveals the client's mental health had improved sufficiently to justify her discharge from the hospital prior to the

initiation of the lawyer-client relationship. Although the client was emotionally distressed and vulnerable during the attorney-client relationship, and notwithstanding her history of drug and alcohol abuse that had caused her financial hardship, the record does not support a finding that these stressors and chemical dependencies were so severe as to impair her capacity "to make adequately considered decisions" in connection with the matters about which she sought legal representation. Indeed, the client's testimony did not suggest her mental state—or medications, if any, taken to treat it—caused her difficulty in making decisions during the time she was represented by Bowles. The board offered no evidence tending to prove the client's use of crack cocaine or alcohol substantially diminished her capacity to make adequately considered decisions during the time she was represented by Bowles. Upon our review of the record, we conclude a convincing preponderance of the evidence does not support a conclusion that Bowles violated this rule.

**C. Rule 32:8.4(d)—Conduct Prejudicial to the Administration of Justice.** The commission concluded Bowles engaged in conduct prejudicial to the administration of justice when he (1) engaged in sexual conduct at the courthouse with the client who believed he would represent her if she engaged him in oral sex, (2) represented the client in a court hearing the day after a district court judge advised him not to do so, and (3) knowingly relied on the client's false affidavit to defend against the charge that he had violated the ethical rules. We have previously concluded that an attorney's sexual conduct with a client does not constitute a per se violation of rule 32:8.4(d). *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Monroe*, 784 N.W.2d 784, 789 (Iowa 2010). In other words, rule 32:8.4(d) "does not prohibit a particular act or conduct in

isolation." *Id.* The rule instead prohibits conduct that produces "an undesirable *effect*: . . . some interference with the efficient and proper operation of the courts through a deviation 'from the well-understood norms and conventions of practice.' " *Id.* (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 769 (Iowa 2010)).

Although, as we have already noted, Bowles did commit an ethical violation when he had sexual relations with the client on multiple occasions, we conclude the sexual misconduct did not violate rule 32:8.4(d). The board failed to prove that the sexual misconduct interfered with the efficient and proper operation of the courts.

Additionally, while Bowles exhibited extremely poor judgment in appearing in court with the client the day after he was advised by a judge not to do so, we conclude the board has not established that the conduct disrupted the efficient operation of the courts. Accordingly, Bowles' appearance at the contempt hearing did not constitute a violation of rule 32:8.4(d).

Bowles knowingly facilitated the client's preparation of a false affidavit and then relied on the document in defending against the charge of ethical misconduct prior to the hearing before the commission. His attempt to obstruct the investigation of, and prosecution for, his misconduct interfered with the efficient and proper operation of this court's regulatory function. Accordingly, we conclude the board did meet its burden to prove Bowles violated rule 32:8.4(d).

### V. Sanction.

We determine an appropriate sanction based on the particular circumstances of each case. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Marks*, 759 N.W.2d 328, 332 (Iowa 2009). In selecting the appropriate sanction for an ethical violation,

we consider the nature and extent of the respondent's ethical infractions, his fitness to continue practicing law, our obligation to protect the public from further harm by the respondent, the need to deter other attorneys from engaging in similar misconduct, our desire to maintain the reputation of the bar as a whole, and any aggravating or mitigating circumstances.

*Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Kallsen,* 670 N.W.2d 161, 164 (Iowa 2003).

We have previously detailed the rationale for suspending the license of lawyers who engage in improper sexual conduct with clients. *Monroe,* 784 N.W.2d at 790 (noting the nature of the ethical infraction and the need to deter other attorneys from engaging in similar misconduct are considerations mandating suspensions for sexual misconduct). In *McGrath,* our opinion surveyed sanctions imposed in other cases involving sexual misconduct by attorneys. *McGrath,* 713 N.W.2d at 703. The sanctions imposed for such misconduct have ranged from a public reprimand, *Comm. on Prof'l Ethics & Conduct v. Durham,* 279 N.W.2d 280, 285–86 (Iowa 1979) (attorney engaged in kissing and caressing with a prisoner-client on three occasions), to a suspension of three years, *McGrath,* 713 N.W.2d at 703 (attorney solicited sex from one client and engaged in intercourse with another client on two occasions in exchange for legal services).

We conclude a suspension of Bowles' license is appropriate in this case. He breached the trust bestowed on members of the bar when he engaged in sex acts with a vulnerable client who sought his professional assistance in a matter of profound personal significance—custody of children. The sanction of suspension is justified in this case to protect members of the public and to discourage similar misconduct by other lawyers. *McGrath,* 713 N.W.2d at 703. In determining the appropriate length of the suspension, we have viewed sexual misconduct by lawyers

with clients who are mentally or emotionally challenged as deserving of a greater sanction. *Marzen*, 779 N.W.2d at 769 (noting the client's mental health challenges were an aggravating circumstance in the determination of the imposition of attorney's discipline).

Bowles urges the court to consider as mitigating circumstances his anxiety, depression, and attention deficit disorder that affected him during the period in which his misconduct occurred.[3] Mitigating circumstances, while not excusing the disciplinary violations, may have a bearing on severity of sanction. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Grotewold*, 642 N.W.2d 288, 292–96 (Iowa 2002) (major depression). "While depression does not minimize the seriousness of unethical conduct, it can impact our approach to discipline." *Id.* at 295. For purposes of our adjudication of this matter, we credit Bowles' testimony that he was experiencing some mental health challenges during the period in which he engaged in the misconduct described above. We have previously noted, however, that the determination that mental health difficulties are a mitigating circumstance in the imposition of discipline is dependent upon the relationship between the unethical conduct and the mental health difficulties. *Id.* We are not persuaded on this record that such a relationship existed between Bowles' misconduct and his mental health difficulties. Accordingly, we conclude Bowles' misconduct is not mitigated by any mental health condition extant at the time of his misconduct.

---

[3]Bowles submitted two documents to the commission after the date of the hearing in this matter. The board has filed a motion to exclude the documents referred to by Bowles as "exhibits" one and two. Because Bowles laid no foundation in the record for the admission of the documents and the board had no opportunity during the hearing to challenge their authenticity, relevance, or probative value, this court will not consider them.

We conclude a suspension of eighteen months is appropriate in this case. Although lesser sanctions have been imposed in other recent cases in which an attorney engaged in multiple acts of sexual misconduct with a single client, *see Iowa Supreme Ct. Att'y Disciplinary Bd. v. Morrison*, 727 N.W.2d 115, 119–20 (Iowa 2007), this case presents aggravating circumstances justifying a longer suspension. As in *Marzen*, the client in this case had only recently been discharged from a mental health facility. *Marzen*, 779 N.W.2d at 765. The respondent committed a separate violation of our disciplinary rules when he facilitated the client's preparation of a false affidavit and then relied on the document to obstruct the investigation and prosecution of this matter. A further aggravating factor affecting our determination of the sanction in this case is the fact that the respondent was publicly reprimanded on a previous occasion for his neglect of an appeal resulting in its dismissal. Case law establishes that "prior disciplinary action is properly considered as an aggravating circumstance." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Gallner*, 621 N.W.2d 183, 188 (Iowa 2001).

## VI. Conclusion.

We suspend Bowles' license to practice law with no possibility of reinstatement for a period of not less than eighteen months from the date of this opinion. This suspension applies to all facets of the practice of law. *See* Iowa Ct. R. 35.12(3). Bowles shall have the burden upon application for reinstatement to prove he has not practiced during the period of suspension and he meets all the requirements set forth in Iowa Court Rule 35.13. The costs of the action are taxed against Bowles as provided in Iowa Court Rule 35.26(1).

**LICENSE SUSPENDED**.