# IN THE SUPREME COURT OF IOWA

No. 21–0309

Submitted September 16, 2021—Filed October 15, 2021

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**SCOTT D. FISHER,**

Respondent.

On review of the report of the Iowa Supreme Court Grievance Commission.

Iowa Supreme Court Grievance Commission determined that an attorney violated multiple rules of professional conduct and recommended the attorney's license be suspended. **LICENSE SUSPENDED.**

Christensen, C.J., delivered the opinion of the court, in which all justices joined.

Tara van Brederode and Crystal W. Rink, Des Moines, for complainant.

Scott D. Fisher, Apex, North Carolina, pro se.

**CHRISTENSEN, Chief Justice.**

The Iowa Supreme Court Attorney Disciplinary Board (Board) charged an Iowa attorney, Scott D. Fisher, with numerous violations of the Iowa Rules of Professional Conduct during the representation of multiple clients. The charges involved client neglect, mishandling funds and trust accounts, revealing confidential information of former clients on the internet, false statements, frivolous filings, improperly withdrawing from a case, conduct prejudicial to justice, and failing to cooperate with the Board. The Iowa Supreme Court Grievance Commission (commission) determined the Board proved a majority of its charges and recommends we suspend Fisher's license for one year. The Board and Fisher agree that a one-year suspension is appropriate. Upon our de novo review of the record, we suspend Fisher's license for one year.

**I. Factual and Procedural Background.**

This is a review of an attorney disciplinary proceeding against the respondent, Scott D. Fisher, currently of Apex, North Carolina (formerly of Waukee, Iowa), an attorney admitted to practice law in Iowa since 2007.

On October 23, 2019, the Board filed its first complaint against Fisher. On October 26, 2020, the Board amended its complaint to reflect a removal of a count but maintained ethical violations occurred during the representation or interactions with Haylie Reiter, Michelle Curry, Dustin Hallett, J.H., A.H., and C.B.W., along with various trust account violations. In total, the second substituted and amended complaint alleged approximately fifty individual

violations across twenty separate ethics rules during the representation of six different clients.

Fisher answered both complaints. In his answer, Fisher admitted to some trust account violations under Iowa Rules of Professional Conduct 32:1.15(c) (withdrawal of fees only when earned) and 32:1.15(f) (trust accounting governed under chapter 45), and under Iowa Court Rules 45.2(3)(*c*) (types of acceptable records for trust funds) and 45.7(4) (notification of fee withdrawal from trust funds). Fisher also admitted to one violation of rule 32:8.1(b) (failure to respond to disciplinary proceedings). Fisher denied the remaining allegations in his answer.

A hearing before the commission occurred November 2 through November 5, 2020, and reconvened on November 30. The commission determined Fisher violated the following ethics rules, several of which reoccurred between clients:

- 32:1.3 (diligence),
- 32:1.4(a)(2), (3), and (4) (client communication),
- 32:1.5(a) (unreasonable fee agreement),
- 32:1.9(c)(2) (revealing confidential information of a former client),
- 32:1.15(c) (withdrawal of fees when earned),
- 32:1.15(d) (prompt delivery of accounting)
- 32:1.16(b)(1) and 32:1.16(d) (proper withdrawal),
- 32:3.2 (expediting litigation),
- 32:3.4(d) (diligence with regard to discovery),
- 32:8.1(b) (responding in disciplinary proceedings),
- 32:8.4(d) (misconduct prejudicial to justice),

- 45.2(3)(*a*) (complete records of funds and other property),
- 45.2(3)(*c*) (types of acceptable records for funds),
- 45.7(4) (notification of fee withdrawal),
- 45.10(3) (proper fee agreements).

Based on these violations, the commission recommended a suspension of one year. The commission set forth its factual findings, conclusions of law, analysis of mitigating and aggravating factors, and sanction in a report filed March 8, 2021.

Fisher and the Board did not contest the commission's factual findings. Upon our de novo review of the record, we agree with the commission's factual findings. We briefly summarize the commission's factual findings surrounding the ethics violations.

**A. Haylie Reiter.** In August 2016, Haylie Reiter (formerly known as Kelsey Blake) hired Fisher for a custody modification action. Fisher's failure to notify Reiter of outstanding opposing attorney fees and to timely return complete discovery to the opposing party led to contempt charges against Reiter. Fisher also filed a frivolous motion for sanctions. Fisher later revealed Reiter's outstanding legal fees in a publicly viewable online exchange.

**B. Michelle Curry.** On February 7, 2017, Michelle Curry hired Fisher to represent her in a marriage dissolution. Fisher failed to complete various aspects of the discovery process and delayed hiring an appraiser to appraise a family farm. Fisher also failed to respond to several inquiries from Curry about discovery or the appraiser. After Curry terminated the representation and hired

a new attorney, Fisher engaged in a drawn out dispute with Curry and the new attorney over whether Fisher would give Curry's client file to the new attorney.

**C. Dustin Hallett.** In June 2017, Dustin Hallett asked Fisher to file a custody modification action to gain sole custody of two minor children from Rebecca Holbrook, but Fisher struggled to get Holbrook served. Fisher made it difficult for Hallett's new attorney to obtain independent documentation about the trust account funds for Hallett and Hallett's client file. Fisher later revealed Hallett's outstanding legal fees in a publicly viewable online exchange.

**D. J.H.** On June 9, 2017, Fisher filed a petition for termination of J.H.'s parental rights on behalf of C.J.R. Fisher hired a process server but either lost or never obtained proof of service. Despite this uncertainty, he emailed J.H.'s mother that he possessed an affidavit of service and he was going to terminate J.H.'s parental rights at a hearing even though he later filed a continuance.

**E. A.H.** On September 1, 2017, A.H. and Fisher entered into an attorney–client relationship. Fisher pursued a custody modification action in September and then a termination action in November. Fisher also removed $615 of unearned money from A.H.'s funds almost immediately and had substantial overlap in billing between the custody modification and the termination actions. Fisher did not respond to a guardian ad litem's continuance motion and did not update A.H. on various aspects of the case.

**F. C.B.W.** On February 21, 2018, C.B.W. and J.B.W. hired Fisher to terminate parental rights of C.B.W.'s former spouse, J.M., with respect to her child L.M. so that C.B.W.'s current spouse could adopt L.M. Fisher's contract

involved a flat fee of $2,100 that was "deemed earned upon commencement of work." He struggled to get J.M. served or submit service by publication through the *Des Moines Register*, resulting in several continuances of the case. Fisher ultimately moved to withdraw on Friday, July 20, at 2:21 p.m. before a Monday, July 23 8:30 a.m. termination hearing after deciding to accept a new nonlegal job offer with a July 23 start date. Fisher did not provide replacement counsel despite offering to do so and told C.B.W. and J.B.W. to represent themselves pro se because most of the work was done. This led to more continuances and an order to show cause against Fisher.

**G. Trust Account Violations.** The Board requested "any fee agreements, all trust account records, all subaccount records, and all notices sent to clients upon withdrawal of funds held in trust with regards" to Reiter, Curry, A.H., and C.B.W. by April 5, 2020. Fisher failed to do so. The Board filed a motion to compel on April 7. On May 21, the commission granted the motion and ordered Fisher to provide documents related to the request within fourteen days of the order. Fisher provided some banking records, invoices, and retainer agreements for a few of the clients. On July 6, the Board filed a motion for sanctions for failure to provide all of the requested trust account records, subaccount records, and notices of withdrawal of trust funds for each of the requested clients. The commission granted the motion for sanctions.

**II. Standard of Review.**

We review attorney disciplinary proceedings de novo. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Kieffer-Garrison*, 951 N.W.2d 29, 35–36 (Iowa 2020). The

Board must prove the alleged attorney misconduct by a convincing preponderance of the evidence. *Id.* at 36. This standard is more demanding than proof by a preponderance of the evidence but "less demanding than proof beyond a reasonable doubt." *Id.* (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Nine*, 920 N.W.2d 825, 827–28 (Iowa 2018)). We respectfully consider the commission's factual findings and recommendations but we are not bound by them. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Noel*, 923 N.W.2d 575, 582 (Iowa 2019). The parties are also bound by stipulated facts in "reference to their subject matter and in light of the surrounding circumstances and the whole record." *Nine*, 920 N.W.2d at 828 (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Johnson*, 884 N.W.2d 772, 777 (Iowa 2016)). Lastly, we "have the discretion to 'impose a greater or lesser sanction than what the commission has recommended upon proof of an ethical violation.' " *Kieffer-Garrison*, 951 N.W.2d at 36 (quoting *Noel*, 923 N.W.2d at 582).

**III. Discussion.**

Fisher and the Board did not contest the commission's legal conclusions. We agree with the commission's legal conclusions based on our analysis of the record.

Our last issue is to determine the appropriate sanction. We agree with the commission's analysis of the aggravating and mitigating circumstances. We briefly summarize such factors and address Fisher's comments regarding his remorse and mental health issues from his brief regarding sanctions.

Fisher's legal practice showed a clear pattern of misconduct across several clients. The record is filled with examples of clients or opposing counsel sending

several emails asking for updates or questions on their cases, as well as many follow-up emails, texts, or calls that went unanswered. Fisher also failed to meet various deadlines and inform clients of important updates in their cases. This misconduct amounted to a concerning amount of continuances, contempt charges, and the hiring of several new attorneys.

We also stress that the misconduct impacted children through custody modification or termination actions—practice areas which Fisher held out as being his expertise. Clients, such as A.H. and C.B.W., strongly indicated either in emails, texts, or online reviews how Fisher's neglect or abandonment negatively affected the relationship with their children and their own mental health. The fact that some clients were ultimately successful in their legal proceedings does not justify the stress that they endured during the attorney–client relationship with Fisher.

Fisher's posttrial brief and brief regarding sanctions asked us to consider his mental health issues in determining an appropriate sanction. In October 2016, Fisher was diagnosed with generalized anxiety disorder and panic disorder. Fisher took daily medication of Prozac and Xanax. He also changed his routine to manage his anxiety. He stopped regularly meeting with a psychiatrist in March 2017 but still takes medication. Identifying mental health issues and seeking treatment is a significant first step. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Bowles*, 794 N.W.2d 1, 7 (Iowa 2011). However, mental health challenges must show a relationship to the unethical conduct to be considered a mitigating circumstance. *Id.* Further, an attorney must continue to address the condition

after its diagnosis to ensure misconduct will not occur or will not occur again. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Turner*, 918 N.W.2d 130, 156 (Iowa 2018). The record does not indicate Fisher's conditions directly caused the violations in the complaint. Moreover, much of the misconduct occurred after his last visit with his psychiatrist. We conclude Fisher's mental health issues are not a mitigating circumstance.

Fisher also listed remorse as a mitigating factor in his posttrial brief and brief regarding sanctions. The record does indicate several times where Fisher directly apologized to testifying witnesses about their previous interactions and that he voluntarily dismissed a small claims judgment against Hallett. We also note that Fisher admitted to wrongdoing for some of the Board's charges either in his answer or during the proceedings. However, we give the commission deference to their factual findings, especially with regard to findings of demeanor and credibility of witnesses. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Sporer*, 897 N.W.2d 69, 84–85 (Iowa 2017). Here, the commission determined Fisher's remorse was not genuine repentance but in response to ethical charges. The commission pointed to several instances within the record where Fisher examined individuals on irrelevant issues. Moreover, Fisher's posttrial brief appears to shift a substantial amount of blame to his clients, opposing counsel, and even judges for his ethics violations. While an ethics complaint and subsequent proceeding can be extremely unsettling, attorneys must be mindful and maintain respect throughout the entire disciplinary process. We conclude that Fisher's unsubstantiated claim of remorse is not a mitigating circumstance.

The number of violations across several ethics rules and aggravating circumstances warrants a lengthy suspension. The commission's report recommended that we suspend Fisher's license to practice law for one year. Both the Board and Fisher filed briefs in support of a one-year suspension. A one-year suspension would be in line with other attorney disciplinary cases. *See Turner*, 918 N.W.2d at 158 (imposing a one-year suspension for neglect, trust account violations, and multiple other violations); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Clarity*, 838 N.W.2d 648, 663 (Iowa 2013) (imposing a one-year suspension for neglect, trust account violations, unreasonable fees, and other violations); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. McCarthy*, 814 N.W.2d 596, 611 (Iowa 2012) (imposing a two-year suspension for neglect, trust account violations, withdrawal, and other violations). We agree with the commission, the Board, and Fisher to conclude that a suspension of one year is appropriate.

**IV. Disposition.**

We suspend Fisher from the practice of law without the possibility of reinstatement for one year. This suspension applies to all facets of the practice of law as provided in Iowa Court Rule 34.23(3), and Fisher must notify any remaining clients as outlined in Iowa Court Rule 34.24. We tax the costs of this action to Fisher in accordance with Iowa Court Rule 36.24(1).

**LICENSE SUSPENDED.**