# IN THE SUPREME COURT OF IOWA

No. 16–1911

Filed February 10, 2017

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

   Complainant,

vs.

**PAUL KEVIN WATERMAN,**

   Respondent.

_____

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

Grievance commission recommends the suspension of an attorney's license for a violation of ethical rules. **LICENSE SUSPENDED.**

Tara M. van Brederode and Elizabeth Quinlan, for complainant.

Matthew C. McDermott of Belin McCormick, P.C., Des Moines, for respondent.

**MANSFIELD, Justice.**

An attorney had an intimate relationship with a client while representing the client in a dissolution proceeding. The attorney withdrew from representation before the case concluded and self-reported his conduct to the Iowa Supreme Court Attorney Disciplinary Board (the Board). The Board charged the attorney with violating Iowa Rule of Professional Conduct 32:1.8(j).

The parties stipulated as to facts and as to the violation of rule 32:1.8(j). The parties also jointly recommended a thirty-day suspension. Following a formal hearing, the grievance commission concluded the attorney had violated the rule and recommended suspending the attorney's license for forty-five days and requiring him to attend therapy for at least two years. Upon our review, we also find the attorney violated rule 32:1.8(j). We suspend the attorney's license to practice law for thirty days.

## I. Background Facts and Proceedings.

Paul Waterman practices law in Iowa City. After a short period of working in Washington, D.C., Waterman was admitted to the Iowa bar in 2006. Since then, he has been engaged in private practice in the Iowa City–Cedar Rapids area, most recently as a partner in a small law firm. Waterman practices primarily in the area of family law.

In May 2014, Jane Doe met with Waterman for legal advice. Doe is a business professional with an M.B.A. and is a C.P.A. Doe had recently separated from her husband and sought advice from Waterman regarding dissolution of her marriage. After their initial May consultation, Waterman did not hear from Doe again until September. At that time, Doe wanted a protective order because her husband had threatened violence. Waterman explained to Doe the procedure for

obtaining a protective order, and the next month, he filed a dissolution petition on Doe's behalf. The main contested issue in the dissolution case was custody of the couple's young children.

Waterman and Doe continued to meet to discuss the case. The conversation during those meetings, according to Waterman, started to "diverge from professional topics." Waterman and Doe also began having lunch together and texting each other.

Waterman recognized his relationship with Doe had moved beyond that of an attorney and a client. He told Doe he should withdraw from representing her and gave her the names of two lawyers. In November, while Doe was still in the process of obtaining new counsel, she and her husband participated in a mediation without counsel present. The mediation appeared to have resolved many of the parties' issues, including child custody.

Based on the outcome of the mediation, Waterman drafted a stipulation of settlement on Doe's behalf and sent it to the husband's lawyer. Because Doe believed the mediation had been successful, she did not retain new counsel. Around this time, Waterman and Doe began a sexual relationship.

Meanwhile, Waterman did not hear back from the husband's counsel for several weeks regarding the settlement. Eventually, the husband's counsel informed Waterman that the husband had changed his mind on custody and would not sign the stipulation. Negotiations between the two attorneys followed. Waterman once more discussed with Doe the need to engage replacement counsel. Doe agreed she would meet with a potential new attorney upon her return from a family vacation over the holidays.

On January 12, 2015, the husband's attorney emailed Waterman indicating that the husband would accept the prior deal. Again believing settlement was imminent, Doe did not retain the substitute attorney, and Waterman remained her attorney of record.

In mid-February, the husband's attorney advised Waterman that the husband had yet again changed his mind. Waterman told Doe that he did not anticipate settlement and she must retain new counsel. Waterman filed a motion to withdraw on February 27, and Doe hired new counsel.

During February, Doe's husband became aware of a relationship between Doe and Waterman. On March 3, the husband's counsel sent Waterman an email, stating that he intended to conduct additional discovery relating to custody, including discovery on Waterman's relationship with Doe. Waterman responded that he would be self-reporting an ethical violation to the Board. Waterman in fact filed a detailed self-reporting letter with the Board on March 12.

Following Waterman's replacement as Doe's counsel, Doe and her husband participated in a second mediation in April. A stipulation of settlement was filed shortly thereafter. This settlement was a "tweaked" version of the earlier document drafted by Waterman. Waterman's relationship with Doe ended in June.

Waterman's self-reporting letter concluded,

> I admit and take full responsibility for my violation of Iowa Rule of Professional Conduct 32:1.8(j). I was aware of the rule when I committed the violation and did not take corrective action as quickly as I could have. I recognize that the rule forbidding attorneys from having sexual relationships with clients is especially important in family law cases as clients in those cases disclose intimate, personal details of their lives causing an increased likelihood that attorneys and clients will develop a personal bond. I am ashamed of my behavior, and I have engaged a professional

therapist . . . to assist me in developing a greater awareness of the need for professional boundaries in attorney-client relationships.

On December 18, the Board filed a complaint against Waterman alleging he had engaged in a sexual relationship with a client in violation of Iowa Rule of Professional Conduct 32:1.8(j). Waterman answered the complaint, admitting all allegations therein. The Board and Waterman entered into a written stipulation. The stipulation set forth an agreed-upon statement of facts, acknowledged that Waterman had violated rule 32:1.8(j), and recommended a thirty-day suspension. The parties also submitted a letter from Waterman's therapist, which stated that Waterman had been attending therapy since March 2015. After receiving the stipulation, the commission scheduled a limited-scope hearing for the parties to expand upon any mitigating or aggravating circumstances.

At the hearing, Waterman testified that he had been diagnosed with a depressive disorder in 2012 and had previously sought out therapy, although he stopped attending in 2013. Waterman explained that he returned to therapy two times a week following his withdrawal from representing Doe.

Waterman has not been the subject of a prior ethics complaint. Waterman testified that he tries to take on pro bono cases regularly. Two witnesses testified to Waterman's positive reputation within the legal community. The attorney for Doe's husband testified that Waterman's relationship with Doe had not actually given his client any leverage in the marriage dissolution proceedings. This attorney also testified that he had only been aware of a *social* relationship between Waterman and Doe; he had no intention of reporting Waterman for ethical violations prior to Waterman's self-reporting.

After the hearing, the commission found that a violation of rule 32:1.8(j) had occurred. The commission members were divided between thirty and sixty days on the length of an appropriate suspension. The commission therefore recommended a suspension of Waterman's license for forty-five days. The commission found the statement provided by Waterman's therapist "uninformative." In addition to a forty-five day suspension, the commission thus recommended that Waterman remain in therapy for at least two years and submit a report of his completion and growth as a result of the therapy.

## II. Standard of Review.

"We review attorney disciplinary proceedings de novo." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Blessum*, 861 N.W.2d 575, 582 (Iowa 2015). While we respectfully consider the findings of the commission, we are not bound by them. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Moothart*, 860 N.W.2d 598, 602 (Iowa 2015). The Board must prove attorney misconduct by a convincing preponderance of the evidence. *Blessum*, 861 N.W.2d at 582. "This standard is more demanding than proof by preponderance of the evidence, but less demanding than proof beyond a reasonable doubt." *Id.* (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ouderkirk*, 845 N.W.2d 31, 33 (Iowa 2014)).

"When the parties enter into a stipulation, . . . they are bound by the stipulated facts, which we interpret with reference to their subject matter and in light of the surrounding circumstances and the whole record." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Johnson*, 884 N.W.2d 772, 777 (Iowa 2016). However, "[w]e are not bound by stipulations as to ethical violations or the appropriate sanction." *Id.*

### III. Analysis.

**A. Violation of Rule 32:1.8: Sexual Relations with a Client.**
Iowa Rule of Professional Conduct 32:1.8(j) provides, "A lawyer shall not have sexual relations with a client, or a representative of a client, unless the person is the spouse of the lawyer or the sexual relationship predates the initiation of the client-lawyer relationship." Iowa R. Prof'l Conduct 32:1.8(j). This type of relationship is prohibited by the rule "regardless of whether the relationship is consensual and regardless of the absence of prejudice to the client." *Id.* r. 32:1.8 cmt. 17; *see also Moothart*, 860 N.W.2d at 605 (recognizing that "a per se rule applies").

There is no dispute Waterman violated rule 32:1.8(j). Waterman's sexual relationship with Doe commenced shortly after the first mediation, while he was still her attorney. Waterman and Doe were not married at that time.

**B. Sanction.** We must now determine the appropriate sanction for Waterman's violation of rule 32:1.8(j). "There is no standard sanction for a particular type of misconduct, and though prior cases can be instructive, we ultimately determine an appropriate sanction based on the particular circumstances of each case." *Blessum*, 861 N.W.2d at 591 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Morris*, 847 N.W.2d 428, 435 (Iowa 2014)). We take into account

> the nature of the violations, the attorney's fitness to continue in the practice of law, the protection of society from those unfit to practice law, the need to uphold public confidence in the justice system, deterrence, maintenance of the reputation of the bar as a whole, and any aggravating or mitigating circumstances.

*Id.* (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Clarity*, 838 N.W.2d 648, 660 (Iowa 2013)). "We respectfully consider the

commission's recommended sanction, but we remain free to impose a greater or lesser sanction." *Johnson*, 884 N.W.2d at 779.

Mitigating factors here include Waterman's lack of a prior disciplinary record, his self-reporting and acceptance of responsibility, and his pro bono work. *See id.* at 781 (discussing these factors). An additional mitigating factor is the lack of actual client harm. *Id.* at 782. No one contends that Waterman's ethical violation affected the course or the outcome of the dissolution proceedings. And a further mitigating factor is Waterman's decision to seek therapy to address certain mental health issues that may have contributed to his misconduct. *Id.* at 781– 82. On the other hand, an aggravating factor is that the relationship occurred during the course of a domestic relations representation. *Id.* at 781.

The appropriate discipline for an attorney who engages in a sexual relationship with a client can range from public reprimand to a lengthy period of suspension from the practice of law. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Marzen*, 779 N.W.2d 757, 767–68 (Iowa 2010). In *Johnson*, we recently reviewed in detail our precedents in this area. *See* 884 N.W.2d at 780–81.

The Board and Waterman maintain that *Johnson* and *Iowa Supreme Court Attorney Disciplinary Board v. Monroe*, 784 N.W.2d 784 (Iowa 2010), are the most analogous decisions to the present case and both support a thirty-day suspension.[1] We agree. The attorney in *Johnson* engaged in a sexual relationship with a client while representing

---

[1]In its statement to us, the Board continues to recommend a thirty-day suspension despite the commission's recommendation of forty-five days. *See* Iowa Ct. R. 36.21(1). We agree that the Board should recommend a less severe sanction than the commission has proposed when the Board believes that is appropriate.

him in several criminal and family law matters. 884 N.W.2d at 775. Johnson eventually self-reported her conduct to the Board, but only after she had been confronted by federal law enforcement with evidence of the relationship. *Id.* at 775–76. It was an aggravating circumstance that Johnson had been representing the client in family and criminal matters. *Id.* at 781. We also noted, however, there was no evidence anyone suffered harm as a result of the intimate relationship. *Id.* at 782. As mitigating circumstances, we recognized that Johnson had no prior history of discipline, that she had performed a significant amount of pro bono work, and that she had also "sought counseling to address certain mental health issues that may have contributed to her misconduct." *Id.* at 781–82. We imposed a thirty-day suspension. *Id.* at 782.

In *Johnson,* we viewed *Monroe* as the "most comparable" of our prior ethics cases. *Id.* at 781. *Monroe* likewise involved an attorney who had a sexual relationship with a client while representing the client in a dissolution proceeding and on various criminal charges. 784 N.W.2d at 787. We recognized that clients in dissolution proceedings are "particularly vulnerable[,] . . . and the possibility of harm, especially when child custody matters are at stake, is high." *Id.* at 790. As in *Johnson,* there was no evidence that the sexual relationship in *Monroe* affected the outcome of a legal proceeding. *Id.* n.3. The attorney admitted he had violated the rule, and we shared the commission's view that he had " 'genuinely wanted to assist Ms. Doe, [but] lost sight of the ethical boundaries' governing his relationship with his client." *Id.* at 791 (alteration in original). We noted that the misconduct appeared to be an isolated incident, that the relationship between Monroe and the client was "not predatory," and that Monroe had sought counseling from a professional that he had previously seen for depression prior to the

misconduct. *Id.* at 791–92. We suspended Monroe's license for thirty days. *Id.* at 792.

After considering the relevant facts of this case, the recommendation of the commission, the aggravating and mitigating circumstances, and our own precedents, we agree with the parties that a thirty-day suspension of Waterman's law license is warranted. We do not adopt the commission's recommendation that Waterman be required to remain in therapy for two years. We often decline to impose conditions like this, in part because we do not have a mechanism for supervising their performance. *See, e.g., Iowa Supreme Ct. Att'y Disciplinary Bd. v. Hedgecoth,* 862 N.W.2d 354, 366 (Iowa 2015).

## IV. Conclusion.

For the reasons stated, we suspend Waterman from the practice of law with no possibility of reinstatement for thirty days. This suspension applies to all facets of ordinary law practice. *See* Iowa Ct. R. 34.23(3). Pursuant to Iowa Court Rule 34.24, Waterman must notify his clients in all pending matters. *See id.* r. 34.24(1). Waterman is assessed the costs of this action. *See id.* r. 36.24(1). At the conclusion of this suspension, Waterman will be automatically reinstated if he has paid all costs and the Board has not filed an objection to the reinstatement. *See id.* r. 34.23(2).

**LICENSE SUSPENDED.**