# IN THE SUPREME COURT OF IOWA

No. 18–1267

Filed December 7, 2018

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**MICHAEL JON JACOBSMA,**

Respondent.

---

On review of the report of the Iowa Supreme Court Grievance Commission.

The grievance commission found an Iowa attorney violated the rules of professional conduct and recommended a thirty-day suspension of the attorney's license. **LICENSE SUSPENDED.**

Tara van Brederode and Elizabeth E. Quinlan, Des Moines, for complainant.

Jack Bjornstad, Spirit Lake, for respondent.

**HECHT, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board (Board) charged Michael Jacobsma with violating Iowa Rule of Professional Conduct 32:1.8(j) after Jacobsma self-reported having an intimate relationship with a client. The Iowa Supreme Court Grievance Commission (commission) found Jacobsma committed the ethical violation and recommended that his license be suspended for thirty days and that he continue with mental health counseling until discharged by his therapist in writing. Upon our de novo review of the commission's recommendation, we find Jacobsma engaged in sexual relations with a client and suspend his law license for thirty days.

## I. Scope and Standard of Review.

We review attorney disciplinary matters de novo. Iowa Ct. R. 36.21(1); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kowalke*, 918 N.W.2d 158, 161 (Iowa 2018). "The Board must prove attorney misconduct by a convincing preponderance of the evidence, a burden greater than a preponderance of the evidence but less than proof beyond a reasonable doubt." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Turner*, 918 N.W.2d 130, 144 (Iowa 2018) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Morse*, 887 N.W.2d 131, 138 (Iowa 2016)). We give the commission's findings, conclusions, and recommendations respectful consideration, but we are not bound by them. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Powell*, 830 N.W.2d 355, 358 (Iowa 2013).

"When an attorney admits facts alleged by the Board in an answer to a complaint, we deem those facts to be established." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Taylor*, 887 N.W.2d 369, 373 (Iowa 2016). Similarly, when an attorney makes and the commission accepts a stipulation of facts, that stipulation is binding on us. Iowa Ct. R. 36.16(2).

In contrast, an attorney's stipulation to a rule violation is not binding on us. *Id.* r. 36.16(3); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Willey*, 889 N.W.2d 647, 653 (Iowa 2017). "[W]e will find the attorney violated the Iowa Rules of Professional Conduct only if the record reveals a factual basis for concluding a violation of the rules occurred." *Taylor*, 887 N.W.2d at 373.

## II. Background Facts and Proceedings.

Jacobsma was admitted to practice in Iowa on April 18, 1997. At all times relevant to this proceeding and the alleged underlying conduct, he practiced law in Sioux City and Orange City, Iowa.

From May 2017 through November 30, 2017, Jacobsma maintained an attorney–client relationship with Jane Doe, representing her in various legal matters. On October 1, 2017, Jacobsma began a sexual relationship with Doe. Jacobsma and Doe were not husband and wife at the time of the commencement of the sexual relationship.

On November 22, 2017, after Jacobsma's two law partners confronted him, Jacobsma admitted to engaging in a sexual relationship with Doe. Jacobsma's partners informed him that if he did not report his misconduct to the Board, they would file a complaint with the Board as required by Iowa Rule of Professional Conduct 32:8.3(a).

In an email dated November 30, 2017, Jacobsma reported to the Board, "I have violated the provisions of Iowa Rule of Professional Conduct 32:1.8(j) wherein I had a sexual relationship with a client of mine after the lawyer-client relationship was established." Jacobsma supplemented his initial self-reporting with a letter to the Board, dated January 29, 2018, in which he provided "a more detailed report of the facts and circumstances giving rise to the violation with supporting documents as well as legal arguments supporting [his] request for a deferral of further proceedings."

On March 22, 2018, the Board filed a complaint before the commission, alleging Jacobsma's conduct violated Iowa Rule of Professional Conduct 32:1.8(j). Jacobsma filed his answer on April 16, 2018, admitting he engaged in a sexual relationship with Doe, to whom he was not married, after the initiation of an attorney–client relationship. In his answer, Jacobsma also admitted to violating rule 32:1.8(j).

The Board and Jacobsma subsequently filed a joint stipulation pursuant to Iowa Court Rule 36.16. As factual support for the finding of a rule violation, the parties stipulated that Jacobsma represented Doe in various legal matters between May 2017 and November 30, 2017; "[o]n or about October 1, 2017, Jacobsma began a sexual relationship with Doe"; "Jacobsma and Doe were not husband and wife at the time of the sexual relationship"; and "[t]he attorney-client relationship preceded the intimate relationship with Jane Doe." Additionally, the parties stipulated to a thirty-day suspension of Jacobsma's law license for the rule violation.

The commission issued its report on July 19, 2018. It found that while engaged in an attorney–client relationship with Doe, Jacobsma and Doe commenced a sexual relationship and "Jacobsma and Doe were not husband and wife at the time of the sexual relationship." The commission concluded "that the facts as set forth in the Stipulated Facts Supporting Violation of Rule 32:1.8(j) set forth above [in the report], prove by a convincing preponderance of the evidence, that Jacobsma violated Rule 32:1.8(j)." Finally, the commission recommended a thirty-day suspension of Jacobsma's law license as the appropriate sanction and continuing counseling.

## III. Rule Violation.

First, we must determine whether the record establishes the alleged rule violation by a convincing preponderance of the evidence. Iowa Rule

of Professional Conduct 32:1.8(j) provides, "A lawyer shall not have sexual relations with a client, or a representative of a client, unless the person is the spouse of the lawyer or the sexual relationship predates the initiation of the client-lawyer relationship." "[T]his rule prohibits the lawyer from having sexual relations with a client regardless of whether the relationship is consensual and regardless of the absence of prejudice to the client." *Id.* r. 32:1.8 cmt. [17].

The Board alleged and Jacobsma admitted in his answer that "[f]rom May 2017 through November 30, 2017, Jacobsma represented Jane Doe in several matters in Sioux County"; "[o]n or about October 1, 2017, Jacobsma began a sexual relationship with Doe"; "Jacobsma and Doe were not husband and wife at the time of the intimate relationship"; and the attorney–client relationship preceded the intimate relationship. (Footnote omitted.). Accordingly, we deem those facts established. *See Taylor*, 887 N.W.2d at 373 ("When an attorney admits facts alleged by the Board in an answer to a complaint, we deem those facts to be established.").

Additionally, Jacobsma made and the commission accepted a stipulation of those same facts. Thus, that factual stipulation is binding on us. *See* Iowa Ct. R. 36.16(2) ("If the grievance commission accepts a stipulation of facts, the stipulation binds the parties, the grievance commission, and the supreme court.").

Based on those established and binding facts, we find Jacobsma engaged in a sexual relationship with a client, the client was not Jacobsma's spouse at the time of the sexual relationship, and the sexual relationship did not predate the attorney–client relationship. Consequently, we conclude Jacobsma's conduct violated rule 32:1.8(j).

**IV. Sanction.**

Next, we must determine the appropriate sanction. "There is no standard discipline for a particular type of attorney misconduct," *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Marzen*, 779 N.W.2d 757, 767 (Iowa 2010) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kadenge*, 706 N.W.2d 403, 410 (Iowa 2005)), and imposing a default sanction for a particular type of misconduct would be inappropriate, *see Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 769 (Iowa 2010). Nonetheless, "[w]e seek to 'achieve consistency with prior cases when determining the proper sanction.' " *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Crotty*, 891 N.W.2d 455, 466 (Iowa 2017) (quoting *Templeton*, 784 N.W.2d at 769).

> In considering an appropriate sanction, this court considers all the facts and circumstances, including the nature of the violations, the attorney's fitness to practice law, deterrence, the protection of society, the need to uphold public confidence in the justice system, and the need to maintain the reputation of the bar. We also consider mitigating and aggravating circumstances. The court gives respectful consideration to the findings and recommendations of the commission, but "may impose a greater or lesser sanction than that recommended by the commission."

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. McGinness*, 844 N.W.2d 456, 463–64 (Iowa 2014) (citations omitted) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Wheeler*, 824 N.W.2d 505, 509–10 (Iowa 2012)).

Jacobsma is not the first Iowa lawyer to violate our rule prohibiting sexual relationships with clients. "Our past cases reveal a broad range of discipline for attorneys who engage in sexual relations with a client. This range is between a public reprimand and a lengthy period of suspension from the practice of law." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Johnson*, 884 N.W.2d 772, 780 (Iowa 2016) (quoting *Marzen*, 779 N.W.2d at 767). "The wide range of discipline largely results from the presence or

absence of circumstances in addition to the sexual relations that make the overall misconduct more serious." *Marzen*, 779 N.W.2d at 767.

**A. Reprimand or Suspension.** In *Committee on Professional Ethics & Conduct v. Durham*, the attorney and her client, who was an inmate at the time, "engaged in kissing and embracing during the [penitentiary] visits in question, as well as at least occasionally caressing or fondling each other." 279 N.W.2d 280, 282 (Iowa 1979). We found the attorney's conduct violated Ethical Considerations 1-5 and 9-6 and Disciplinary Rule 1-102(A)(6) of the Iowa Code of Professional Responsibility for Lawyers [ICPRL].[1] *Id.* at 285.

We concluded the appropriate sanction in *Durham* was a public reprimand. *Id.* at 286. Notably, at the time of the *Durham* case, our rules of professional conduct did not include a per se prohibition of sexual conduct between an attorney and client. *See id.* at 285. *See generally Johnson*, 884 N.W.2d at 780 n.2. Instead, the attorney's conduct was unethical because she was acting in her legal capacity as an attorney at the time of the conduct. *Durham*, 279 N.W.2d at 285.[2] Additionally, this court reasoned a suspension would be unwarranted because "the

---

[1]At the time of *Durham*, Ethical Consideration 1-5 required "attorney[s] to be 'temperate and dignified,'" Ethical Consideration 9-6 "prohibit[ed attorney] conduct indicating professional impropriety or the appearance thereof," and Disciplinary Rule 1-102(A)(6) "bar[red attorney] conduct 'that adversely reflects on [the attorney's] fitness to practice law.'" *Durham*, 279 N.W.2d at 283 (first quoting Iowa Code of Prof'l Responsibility EC 1-5; then quoting *id.* EC 9-6; and then quoting *id.* DR 1-102(A)(6)).

[2]This court explained,

> If the respondent had not been present [at the jailhouse visits] in a professional capacity, no violation of the Code of Professional Responsibility would have occurred. We do not mean to say that private sexual conduct by an attorney cannot be violative of the ICPRL, but only that it is not respondent's conduct per se which we find reprehensible on these facts. Rather, it is the legal capacity in which she was acting which we find to be the essential element of these violations.

*Durham*, 279 N.W.2d at 285 (citations omitted).

occurrences in question [were] rather isolated incidents of professional indiscretion which do not raise extensive doubts as to the respondent's fitness to practice law." *Id.* at 286.

In our more recent cases analyzing the appropriate sanction for a violation of rule 32:1.8(j), we have consistently imposed a license suspension of some length. *E.g., Iowa Supreme Ct. Att'y Disciplinary Bd. v. Waterman,* 890 N.W.2d 327, 333 (Iowa 2017) (thirty-day suspension); *Johnson,* 884 N.W.2d at 782 (thirty-day suspension); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Moothart,* 860 N.W.2d 598, 617 (Iowa 2015) (thirty-month suspension); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Bowles,* 794 N.W.2d 1, 7 (Iowa 2011) (eighteen-month suspension); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Monroe,* 784 N.W.2d 784, 791 (Iowa 2010) (thirty-day suspension); *Marzen,* 779 N.W.2d at 769 (six-month suspension); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Morrison,* 727 N.W.2d 115, 120 (Iowa 2007) (three-month suspension); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McGrath,* 713 N.W.2d 682, 703–04 (Iowa 2006) (three-year suspension).

In *Monroe,* we discussed the rationale for imposing a license suspension on an attorney who engaged in improper sexual relations with a client. 784 N.W.2d at 790. In that case, we concluded "the nature of the ethical infraction and the need to deter other attorneys from engaging in similar misconduct" mandated a suspension. *Id.* We explained,

> There is no gray area with respect to the prohibition of such conduct, no nuance subject to differing interpretations. Therefore, the ethical violation is obvious and should have been obvious to Monroe before he engaged in sex with his client.

*Id.* (citations omitted); *accord Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Furlong,* 625 N.W.2d 711, 714 (Iowa 2001) (en banc) (noting the

prohibition on sexual relationships between attorneys and clients is not one of "many gray areas" in professional responsibility law). We further reasoned, "It is important to deter other attorneys in similar circumstances from putting their own self-interest ahead of those of the client, the very antithesis of a lawyer's professional duty." *Monroe*, 784 N.W.2d at 790.

We believe the circumstances of this case warrant a suspension. This case is more like our recent cases involving rule 32:1.8(j) violations than *Durham*. Moreover, the rationale from *Monroe* applies to this case and supports the imposition of a license suspension. "The sanction of suspension is justified in this case to protect members of the public and to discourage similar misconduct by other lawyers." *Bowles*, 794 N.W.2d at 7; *accord Monroe*, 784 N.W.2d at 790.

**B. Length of Suspension.** Having concluded a license suspension is the appropriate type of sanction for Jacobsma's violation of rule 32:1.8(j), we must determine the length of the suspension. The Board and Jacobsma stipulated to, and the commission recommended, a thirty-day suspension. We agree this is the appropriate length for the suspension.

1. *Jacobsma's case is distinguishable from cases warranting lengthier suspensions.* First, the facts and circumstances of Jacobsma's case are distinguishable from cases where we imposed lengthier suspensions. *See, e.g.*, *Moothart*, 860 N.W.2d at 616, 617 (imposing thirty-month suspension where attorney "admitted to having sex twice with one client, and we ha[d] found he paid another client for sex and sexually harassed five women"); *Bowles*, 794 N.W.2d at 7 (imposing eighteen-month suspension where attorney engaged in a sexual relationship with a client recently discharged from a mental health facility); *Marzen*, 779 N.W.2d at 769 (imposing six-month suspension where attorney engaged in a sexual relationship with a client he was representing in an involuntary

commitment proceeding); *McGrath*, 713 N.W.2d at 703–04 (imposing three-year suspension where attorney engaged in and attempted to engage in sexual relationships with multiple clients who were personally and financially vulnerable); *Furlong*, 625 N.W.2d at 712, 714 (imposing eighteen-month suspension where attorney engaged in "uninvited and unwelcome" sex acts with one client and sexually harassed at least two others by making unwanted sexually motivated physical contact).

Here, there are no allegations or evidence in the record of Jacobsma deliberately preying on his client's vulnerable personal, mental, or financial state. *See, e.g., Monroe*, 784 N.W.2d at 791 ("[T]he situation presented by the facts of this case is less egregious than we have encountered with respect to other violations of rule 32.1:8(j)[, in part because] . . . Monroe's conduct was not predatory . . . ."); *cf., e.g., McGrath*, 713 N.W.2d at 703 ("With their relationship with their children at stake and with no financial means, these clients were extremely vulnerable. Preying upon this vulnerability, [McGrath] manipulated these women . . . for his own sexual gratification."). Nor is there any evidence that Jacobsma and Doe's sexual relationship was of the "sex-for-fees" variety. *Cf. Moothart*, 860 N.W.2d at 616. And nothing in the record indicates the relationship was uninvited, unwanted, or harassing toward Doe. *Cf. id.*; *Furlong*, 625 N.W.2d at 712, 714.

2. *Consideration of aggravating and mitigating factors.* Second, our consideration of the aggravating and mitigating factors in this case supports imposition of a thirty-day suspension.

a. *Aggravating factors.* The parties stipulated to and the commission found the following aggravating factors are relevant to the sanction in this case: (1) "experience in the practice of law" and (2) "potential harm to the client." We agree.

Years of experience as an attorney can be considered an aggravating factor. For example, in *Iowa Supreme Court Attorney Disciplinary Board v. Barnhill*, we considered the attorney's twenty years of experience as an aggravating factor. 885 N.W.2d 408, 424–25 (Iowa 2016). Like the attorney in *Barnhill*, Jacobsma had twenty years of experience as an attorney when he engaged in the misconduct at issue. Jacobsma's twenty years of experience are substantial and we view them as an aggravating factor. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kennedy*, 837 N.W.2d 659, 675 (Iowa 2013) (implying twenty years of experience is a substantial amount).

As discussed above, the nature of Jacobsma's violation is highly concerning. The purpose of rule 32:1.8(j) is not only to protect clients from harm but also to protect them from the *potential* for harm. *See* Iowa R. Prof'l Conduct 32:1.8 cmt. [17] ("Because of the significant danger of harm to client interests and because the client's own emotional involvement renders it unlikely that the client could give adequate informed consent, this rule prohibits the lawyer from having sexual relations with a client regardless of whether the relationship is consensual and regardless of the absence of prejudice to the client."); *Monroe*, 784 N.W.2d at 790. The purpose of this rule is even more pertinent when the client is particularly vulnerable, such as when the representation is for family and criminal matters. *See Johnson*, 884 N.W.2d at 781; *Monroe*, 784 N.W.2d at 790 ("The fact that the misconduct occurred while Monroe represented Doe in a dissolution action and in criminal matters is an aggravating circumstance because clients are particularly vulnerable under these circumstances, and the possibility of harm . . . is high.").

Although Jacobsma did not represent Doe in her recent marriage dissolution, he represented her in three criminal matters as well as two

civil matters that derived from the fallout from her marriage dissolution. Doe retained Jacobsma to represent her on two charges of third-degree harassment, a simple misdemeanor, and one charge of violating a no-contact order, all of which arose from Doe's communication with or about her ex-husband's paramour.[3]  Doe also retained Jacobsma to represent her in a civil forcible entry and detainer action and to file, on her behalf, a petition for a temporary and a permanent injunction.  Both of the civil matters arose from Doe's interactions with the parents of her ex-husband.[4] Jacobsma's representation of Doe in these matters is an aggravating factor.  *See, e.g., Johnson,* 884 N.W.2d at 781 ("The fact that Johnson represented Doe in family and criminal matters is an aggravating circumstance.").

b.  *Mitigating factors.*  Additionally, the parties stipulated to and the commission adopted the following mitigating factors: (1) "lack of prior discipline," (2) "isolated misconduct," (3) "remorse," (4) "cooperation with the Board," (5) self-reporting of misconduct, (6) participating in "counseling and mental health treatment," (7) "respected member of the

---

[3]On May 9, 2017, and again on June 13, Doe was charged with third-degree harassment, a simple misdemeanor, for making phone calls to her ex-husband's paramour after police instructed Doe to abstain from contacting the paramour.  Doe retained Jacobsma to represent her in these criminal matters.

On August 31, a no-contact order was entered in the case arising from the June 13 charge.  On September 7, deferred judgments were entered on both charges.

On September 13, Doe was charged with violating the no-contact order, a simple misdemeanor.  Doe again retained Jacobsma to represent her.  Jacobsma moved to dismiss the charge, arguing the no-contact order was invalid, and the court ultimately agreed.

[4]On September 1, 2017, Doe retained Jacobsma to represent her in a civil forcible entry and detainer action that was filed against her by her ex-husband's parents. Jacobsma filed an answer and resistance, and the court ultimately dismissed the forcible entry and detainer petition.

On October 11, Jacobsma filed a petition, on Doe's behalf, for a temporary and a permanent injunction against Doe's ex-husband's parents for interference with Doe's tenancy possessory rights.  The court granted a temporary injunction.

bar," (8) lack of actual harm to Doe, (9) "pro bono and reduced fee practice," (10) "community service and volunteer work," and (11) "military service." We agree these mitigating factors are present here.

Jacobsma has not previously been disciplined for an ethics violation. *See id.* (treating lack of prior discipline as a mitigating factor); *cf. Morrison*, 727 N.W.2d at 120 (imposing three-month suspension where attorney engaged in sexual relationship with a client after being previously admonished for making a sexual advance toward another client). Moreover, the record indicates Jacobsma's misconduct was an isolated occurrence. *See Johnson*, 884 N.W.2d at 781 (treating lack of evidence of prior, similar misconduct as a mitigating factor); *Monroe*, 784 N.W.2d at 791 (treating as a mitigating factor that "the misconduct appear[ed] to be an isolated occurrence, there being no evidence that Monroe had engaged in similar transgressions in the past").

The record also indicates Jacobsma is sincerely remorseful of his conduct and acknowledges that his conduct was unethical. Remorse and acceptance of responsibility are mitigating factors. *E.g., Waterman*, 890 N.W.2d at 332; *Johnson*, 884 N.W.2d at 781. Jacobsma's ability to sincerely express remorse and understand why his actions were inappropriate is also demonstrated (and helped) by his independent decision to seek mental health treatment. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Stoller*, 879 N.W.2d 199, 221 (Iowa 2016) ("[W]e do consistently recognize seeking mental health or other substance abuse treatment as a mitigating factor."). Jacobsma cooperated with the Board, and we also view this as a mitigating factor. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Eslick*, 859 N.W.2d 198, 202 (Iowa 2015) ("[R]emorse and cooperation generally mitigate our sanction.").

We also note that Jacobsma self-reported his violation to the Board. *See Waterman*, 890 N.W.2d at 332 (treating self-reporting as a mitigating factor). However, the fact that Jacobsma did not self-report until his law partners confronted him lessens the mitigating force of this factor. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Bartley*, 860 N.W.2d 331, 339 (Iowa 2015) ("[M]itigation is lessened somewhat when the self-reporting is at least in part motivated by knowledge that the law firm would otherwise be reporting the violation.").

Additionally, Jacobsma is a respected member of the bar as evidenced by the multiple supportive affidavits from other members of the bar submitted to the commission. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Powell*, 726 N.W.2d 397, 408 (Iowa 2007) (treating "affidavits filed on [the attorney's] behalf indicat[ing] he is a highly respected member of the bar and the community" as a mitigating factor). He routinely performs pro bono and reduced-fee work, and volunteers in his community and church.[5] *See, e.g., Iowa Supreme Ct. Att'y Disciplinary Bd. v. Boles*, 808 N.W.2d 431, 442 (Iowa 2012) ("Another significant mitigating factor in this case is Boles' admirable record of volunteer community service to local youth programs and his extensive pro bono practice."). He served in the Iowa Army National Guard for eight years, was honorably discharged, and received several service awards and medals. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Clarity*, 838 N.W.2d 648, 660 (Iowa 2013) (treating "prior military service" as a mitigating factor).

---

[5]Jacobsma estimates that about 22.5% of his work is spent representing indigent clients. He has also provided free legal advice and representation to charitable, religious, and community organizations in his local community. He has served on the Sioux County Civil Service Commission, various boards and committees, and the Sioux County Elected Official Compensation Board.

Finally, we consider the lack of any actual harm to the client as a mitigating factor. *See Johnson*, 884 N.W.2d at 782 (treating lack of actual harm as a mitigating factor); *cf. Powell*, 726 N.W.2d at 408 ("Powell's conduct in causing actual harm to his clients is an aggravating factor."). Jacobsma obtained favorable outcomes in the matters in which he represented Doe at the time of the intimate relationship. In her affidavit in support of Jacobsma, Doe stated the relationship was entirely consensual and she continued to consider Jacobsma a friend. Moreover, although there is no evidence of harm to Doe, we note that Jacobsma has demonstrated he understands and accepts that the purpose of rule 32:1.8(j) is to protect clients from the potential for harm. *See* Iowa R. Prof'l Conduct 32:1.8 cmt. [17]; *Johnson*, 884 N.W.2d at 782 ("And although the facts of this case illustrate the *potential* dangers that can arise when a criminal defense attorney develops too close a relationship with an incarcerated client who is charged with serious crimes, there is no evidence here that anyone suffered harm as a result.").

3. *Consistency with our precedents.* Although "[t]here is no standard sanction for a particular type of misconduct, . . . [our] prior cases can be instructive . . . ." *Waterman*, 890 N.W.2d at 332 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Blessum*, 861 N.W.2d 575, 591 (Iowa 2015)). "We seek to 'achieve consistency with prior cases when determining the proper sanction.'" *Crotty*, 891 N.W.2d at 466 (quoting *Templeton*, 784 N.W.2d at 769). In other cases involving a rule 32:1.8(j) violation with circumstances similar to Jacobsma's case, we have found a thirty-day suspension is the appropriate sanction.

In *Johnson*, we imposed a thirty-day suspension for a rule 32:1.8(j) violation. 884 N.W.2d at 782. *Johnson* involved an attorney who had a sexual relationship with a client while representing the client in family and

criminal matters, which was an aggravating circumstance. *Id.* at 775, 781. However, we noted the lack of harm to the client and considered Johnson's lack of prior discipline, the isolation of the misconduct, her significant pro bono and reduced-fee work, her position as a respected member of the bar, her decision to seek counseling, and her sincere remorse. *Id.* at 781–82. We also acknowledged Johnson self-reported her misconduct but "only *after* the FBI confronted her with evidence of the sexual relationship, a relationship she initially denied." *Id.* at 781.

Similarly, in *Monroe*, we imposed a thirty-day suspension for a rule 32:1.8(j) violation. 784 N.W.2d at 792. Like in *Johnson*, Monroe engaged in a sexual relationship with a client while representing that client in family and criminal matters. *Id.* at 790. But we also considered the lack of harm to the client, the isolation of the misconduct, Monroe's lack of prior discipline, his significant pro bono work, and his position as a respected and otherwise ethical member of the bar. *Id.* at 790 n.3, 791 & n.5. Additionally, we acknowledged Monroe had obtained counseling. *Id.* at 791–92 (implying Monroe's "own 'emotional/personality weaknesses/vulnerabilities' " contributed to his misconduct).

Most recently, in *Waterman*, we imposed a thirty-day suspension for a rule 32:1.8(j) violation. 890 N.W.2d at 333. There, Waterman engaged in a sexual relationship with a client during the course of a domestic relations representation. *Id.* at 330–32. As mitigating factors, we considered the lack of harm to the client and Waterman's lack of prior discipline record, self-reporting, acceptance of responsibility, pro bono work, and "decision to seek therapy to address certain mental health issues that may have contributed to his misconduct." *Id.* at 332.

Jacobsma's conduct and the surrounding circumstances make this case analogous to *Johnson, Monroe*, and *Waterman*. The attorneys in all

four cases engaged in sexual relations with a vulnerable client. *See Waterman*, 890 N.W.2d at 332 (family matter); *Johnson*, 884 N.W.2d at 775, 781 (family and criminal matters); *Monroe*, 784 N.W.2d at 790 (family and criminal matters); *see also Monroe*, 784 N.W.2d at 790 (noting clients in dissolution actions and criminal matters are particularly vulnerable). As in *Johnson, Monroe,* and *Waterman*, Jacobsma's misconduct did not result in actual harm to the client. *See Waterman*, 890 N.W.2d at 332; *Johnson*, 884 N.W.2d at 782; *Monroe*, 784 N.W.2d at 790 n.3, 791 & n.5. Additionally, all four attorneys lacked prior disciplinary records, performed a notable amount of pro bono or reduced-fee work, and sought counseling or treatment to address any mental health issues that may have led to the misconduct. *See Waterman*, 890 N.W.2d at 332; *Johnson*, 884 N.W.2d at 781–82; *Monroe*, 784 N.W.2d at 791–92.

Further, as in *Waterman* and *Johnson*, Jacobsma self-reported his misconduct but, as in *Johnson*, did not do so until after he was confronted. *See Waterman*, 890 N.W.2d at 332; *Johnson*, 884 N.W.2d at 781. As did the attorneys in *Waterman* and *Johnson*, Jacobsma expressed his acceptance of responsibility and sincere remorse. *See Waterman*, 890 N.W.2d at 332; *Johnson*, 884 N.W.2d at 781.

Finally, as in *Johnson* and *Monroe*, Jacobsma's misconduct was an isolated occurrence and he is a respected member of the bar. *See Johnson*, 884 N.W.2d at 781; *Monroe*, 784 N.W.2d at 791.

Upon consideration of all of these pertinent factors, we agree with the commission that a thirty-day suspension of Jacobsma's Iowa law license is the appropriate sanction. We decline to adopt the commission's recommendation that Jacobsma be required to continue mental health counseling until discharged by his therapist in writing. "We often decline to impose conditions like this, in part because we do not have a

mechanism for supervising their performance." *Waterman*, 890 N.W.2d at 333.

### V. Conclusion.

We suspend Jacobsma's license to practice law in this state with no possibility of reinstatement for thirty days. This suspension applies to "all facets of ordinary law practice." Iowa Ct. R. 34.23(3). Jacobsma must timely comply with the notification requirements pursuant to Iowa Court Rule 34.24, including notifying his clients in all pending matters. The costs of this action are assessed to Jacobsma. *Id.* r. 36.24(1). At the end of the suspension, Jacobsma will be automatically reinstated provided he has complied with the costs and reporting requirements in rule 34.23 and the Board has not filed an objection to the reinstatement. *See id.* r. 34.23(2)(*a*)–(*b*).

**LICENSE SUSPENDED.**

All justices concur except Wiggins and Christensen, JJ., who dissent.

#18–1267, *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Jacobsma*

**WIGGINS, Justice (dissenting).**

I respectfully dissent. Our rules of professional conduct make it clear that an attorney shall not have a sexual relationship with a client under these circumstances. Iowa R. Prof'l Conduct 32:1.8(j). The rule provides in relevant part, "A lawyer shall not have sexual relations with a client, or a representative of a client, unless the person is the spouse of the lawyer or the sexual relationship predates the initiation of the client-lawyer relationship." *Id.* This applies even if the relationship is consensual. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Blessum*, 861 N.W.2d 575, 586–87 (Iowa 2015). The comment to the rule discusses the hazards of a lawyer representing a client and at the same time engaging in a sexual relationship with the client. *See* Iowa R. Prof'l Conduct 32:1.8(j) cmt. [17]. The comment states,

> The relationship between lawyer and client is a fiduciary one in which the lawyer occupies the highest position of trust and confidence. The relationship is almost always unequal; thus, a sexual relationship between lawyer and client can involve unfair exploitation of the lawyer's fiduciary role, in violation of the lawyer's basic ethical obligation not to use the trust of the client to the client's disadvantage. In addition, such a relationship presents a significant danger that, because of the lawyer's emotional involvement, the lawyer will be unable to represent the client without impairment of the exercise of independent professional judgment. Moreover, a blurred line between the professional and personal relationships may make it difficult to predict to what extent client confidences will be protected by the attorney-client evidentiary privilege, since client confidences are protected by privilege only when they are imparted in the context of the client-lawyer relationship. Because of the significant danger of harm to client interests and because the client's own emotional involvement renders it unlikely that the client could give adequate informed consent, this rule prohibits the lawyer from having sexual relations with a client regardless of whether the relationship is consensual and regardless of the absence of prejudice to the client.

*Id.*

In 2010, when we suspended an attorney's license for having sexual relationships with his client, we discussed these very principles and made it clear that an attorney

> needs a better understanding of his ethical obligations, the vulnerability of clients under the stress of a dissolution or facing criminal charges, and the impact a sexual relationship between him and his client has on his client and his own ability to professionally represent that client. Without this knowledge, [an attorney] poses a risk to the public.

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Monroe*, 784 N.W.2d 784, 791 (Iowa 2010).

Jacobsma is the third attorney in the last few years to violate rule 32:1.8(j). *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Waterman*, 890 N.W.2d 327, 329–30 (Iowa 2017); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Johnson*, 884 N.W.2d 772, 775–76 (Iowa 2016). In *Waterman*, *Johnson*, and *Monroe*, we suspended the attorneys' licenses for thirty days. *Waterman*, 890 N.W.2d at 333; *Johnson*, 884 N.W.2d at 782; *Monroe*, 784 N.W.2d at 792.

A sanction in a disciplinary case serves many purposes. Three of those purposes are deterrence, protection of the public, and maintaining the reputation of the bar as a whole. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Mathahs*, 918 N.W.2d 487, 494 (Iowa 2018). We decided the *Waterman* and *Johnson* cases over seven months before Jacobsma had sexual relations with his client. Obviously, our thirty-day suspension is not deterring attorneys from engaging in sexual relationships with clients.

A sexual relationship with a client does not protect the public or maintain the reputation of the bar as a whole. As the Iowa Rules of Professional Conduct state, such relationships are "almost always

unequal," and the nature of the relationship renders consent by a client improbable. Iowa R. Prof'l Conduct 32:1.8(j) cmt. [17]. Even if the relationship is consensual "based on genuine love and affection, the personal relationship could cloud the lawyer's professional judgment, and it could impair the lawyer's ability to provide the same competent and loyal representation that other clients receive." 1 Geoffrey C. Hazard, Jr., et al., *The Law of Lawyering* § 13.37, at 13-91 (4th ed. 2018).

For these reasons, I consider a consensual sexual relationship with a client as requiring a more serious sanction than the one imposed by the majority. We must make the sanction so it acts as a real deterrence, protects the public, and maintains the reputation of the bar.

Therefore, I would suspend Jacobsma's license indefinitely with no possibility of reinstatement for three months. Before reinstatement, I would require him to obtain counseling and provide this court with a report showing that he is no longer at risk to engage in sexual relationships with a client. Finally, I would require him to file an application for reinstatement with this court.

A sexual relationship with a client is a serious matter. It is time we deal with it as such. We can no long slap the wrists of attorneys who violate rule 32:1.8(j).

Christensen, J., joins this dissent.