# IN THE SUPREME COURT OF IOWA

No. 18–1582

Filed December 7, 2018

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**MELISSA NINE,**

Respondent.

On review of the report of the Iowa Supreme Court Grievance Commission.

Grievance commission recommends the suspension of an attorney's license for thirty days for a violation of ethical rules. **LICENSE SUSPENDED.**

Tara van Brederode and Elizabeth E. Quinlan, for complainant.

David L. Brown of Hansen, McClintock & Riley, Des Moines, for respondent.

**CHRISTENSEN, Justice.**

An Iowa attorney engaged in an intimate relationship with one of her clients whom she was representing in a marriage dissolution matter. The Iowa Supreme Court Attorney Disciplinary Board charged the attorney with a violation of Iowa Rule of Professional Conduct 32:1.8(j) (sexual relationship with a client). Though the attorney initially expressed her disbelief at the charge when the Board sent her a notice letter requiring her to respond to the alleged misconduct, she admitted her wrongdoing soon thereafter and fully cooperated with the Board.

The parties reached a factual stipulation, agreeing that the charged violation occurred. The grievance commission considered the matter without a hearing and concluded the attorney violated rule 32:1.8(j). The commission recommended the attorney's license be suspended for thirty days. Upon our de novo review, we conclude that the attorney violated rule 32:1.8(j). We agree with the commission's recommended sanction and suspend the attorney's license to practice law for thirty days.

## I. Background Facts and Proceedings.

Melissa Nine is a solo practitioner in Marshalltown who was admitted to the Iowa bar in 2001. In April 2011, John Doe retained Nine to represent him in a marriage dissolution matter, which continued until August 22, 2012. While the dissolution matter was still pending in August 2011, Nine and Doe began an intimate relationship. Doe and Nine were not married to each other at the time of the intimate relationship.

It is unclear when exactly the intimate relationship between Doe and Nine ended. However, on March 1, 2016, the Board sent Nine a notice letter requiring her response to the allegation of sexual misconduct regarding her intimate relationship with Doe. On April 4, Nine requested a complete copy of the Board's file and noted, "I am appalled at these

allegations, to say the least." On April 19, Nine provided her initial response to the Board. She admitted engaging in an intimate relationship with Doe but claimed the relationship occurred "at the appropriate time."

After the Board commenced an investigation into the matter, Nine admitted that she had an intimate relationship with Doe in August 2011 that she later ended. Nine subsequently cooperated fully with the Board and commission. The investigation revealed that Doe did not suffer any financial harm because of the intimate relationship, nor did he claim any emotional or mental harm.

On April 11, 2018, the Board filed a complaint against Nine alleging that she had engaged in sexual relations with a client in violation of Iowa Rule of Professional Conduct 32:1.8(j) and made a false statement of material fact in connection with a disciplinary matter in violation of rule 32:8.1. Nine filed her answer on May 9, admitting all of the allegations except the alleged violation of rule 32:8.1. On June 8, the Board filed an amended complaint, which removed the alleged violation of rule 32:8.1. Nine filed a written consent to the amended complaint on June 8.

On June 28, the Board and Nine submitted a joint stipulation pursuant to Iowa Court Rule 36.16, waiving the formal hearing. The parties agreed that Nine violated rule 32:1.8(j). The matter was submitted to the commission for its consideration on July 17. The commission issued its findings and recommendation on September 10, in which it found the violation of rule 32:1.8(j) was factually supported. The commission recommended that we suspend Nine's license for thirty days.

## II. Standard of Review.

We review attorney disciplinary proceedings de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Johnson*, 884 N.W.2d 772, 776 (Iowa 2016). We are not bound by the findings and recommendations of the

commission, though we give them respectful consideration. *Id.* at 777. The Board bears the burden of proving the alleged attorney misconduct by a convincing preponderance of the evidence. *Id.* "This standard is more demanding than proof by [a] preponderance of the evidence, but less demanding than proof beyond a reasonable doubt." *Id.* (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ouderkirk*, 845 N.W.2d 31, 33 (Iowa 2014)). Finally, the parties are bound by the stipulated facts, "which we interpret with reference to their subject matter and in light of the surrounding circumstances and the whole record." *Id.* Nevertheless, we are not bound by the attorney's stipulation to an ethical violation or the commission's recommended sanction. *Id.*

### III. Ethical Violation.

Iowa Rule of Professional Conduct 32:1.8(j) states, "A lawyer shall not have sexual relations with a client, or a representative of a client, unless the person is the spouse of the lawyer or the sexual relationship predates the initiation of the client-lawyer relationship." Iowa R. Prof'l Conduct 32:1.8(j). This prohibition includes consensual relationships. *Id.* r. 32:1.8 cmt. [17]. Intimate relationships between an attorney and a client pose a number of issues given "[t]he relationship between lawyer and client is a fiduciary one in which the lawyer occupies the highest position of trust and confidence" and the unequal nature of the relationship. *Id.* Additionally, "such a relationship presents a significant danger that, because of the lawyer's emotional involvement, the lawyer will be unable to represent the client without impairment of the exercise of independent professional judgment." *Id.* Though there are "many gray areas" in the professional responsibility realm, "sexual relationships between attorney and client is not one of these. Such conduct is clearly improper." *Johnson,*

884 N.W.2d at 778 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Morrison*, 727 N.W.2d 115, 118 (Iowa 2007)).

Nine admits she violated rule 32:1.8(j). The Board and Nine stipulated to the fact that Nine had an intimate relationship with Doe in August 2011, months after Nine commenced her representation of Doe in his marriage dissolution matter. This relationship did not predate the initiation of the attorney–client relationship, and Doe is not Nine's spouse. Thus, it does not meet either exception to rule 32:1.8(j). *See* Iowa R. Prof'l Conduct 32:1.8(j). Consequently, Nine violated rule 32:1.8(j).

**IV. Sanction.**

Our range of applicable sanctions for an attorney who engages in sexual relations with a client spans from a public reprimand all the way to "a lengthy period of suspension from the practice of law." *Johnson*, 884 N.W.2d at 780 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Marzen*, 779 N.W.2d 757, 767 (Iowa 2010)). "There is no standard sanction for a particular type of misconduct, and though prior cases can be instructive, we ultimately determine an appropriate sanction based on the particular circumstances of each case." *Id.* at 779 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Blessum*, 861 N.W.2d 575, 591 (Iowa 2015)). In determining an appropriate sanction, we consider

> [t]he nature of the violations, the attorney's fitness to continue in the practice of law, the protection of society from those unfit to practice law, the need to uphold public confidence in the justice system, deterrence, maintenance of the reputation of the bar as a whole, and any aggravating or mitigating circumstances.

*Id.* (alteration in original) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Moothart*, 860 N.W.2d 598, 615 (Iowa 2015)). We have imposed relatively harsher sanctions in cases involving multiple violations or especially vulnerable clients. *See, e.g., Moothart*, 860 N.W.2d at 617 (suspending an

attorney's license for at least thirty months because his "actions show[ed] a specific pattern of conduct with respect to a number of victims")  Yet, when the misconduct appears to be an isolated occurrence, we tend to impose suspensions of three months or less.  *See Johnson*, 884 N.W.2d at 780–81.

For example, in *Johnson*, we suspended an attorney's license for thirty days due to similar misconduct.  884 N.W.2d at 781–82.  In that case, Johnson engaged in an intimate relationship with a client she represented in family and criminal matters.  *Id.* at 781.  In reaching her sanction, we noted a number of mitigating circumstances.  Importantly, Johnson's misconduct appeared to be an isolated occurrence given the absence of any evidence showing similar misconduct in the past.  *Id.*  We noted that nobody appeared to suffer harm from the relationship.  *Id.* at 782.  We also acknowledged that Johnson self-reported, though she only did so after the FBI confronted her with evidence of the relationship.  *Id.* at 781.  Further, we noted Johnson's counseling to address mental health issues that may have played a role in her misconduct and her admirable pro bono work.  *Id.* at 781–82.  Nevertheless, we also considered "[t]he fact that Johnson represented Doe in family and criminal matters" as an aggravating circumstance given the vulnerable nature of clients in these circumstances.  *Id.* at 781.

The facts of this case are similar to those of *Johnson.*  As in *Johnson*, Nine's misconduct appears to be an isolated incident, for there is no evidence of similar transgressions or other prior discipline.  Likewise, the Board's investigation revealed that Nine's client did not suffer financial, emotional, or psychological harm due to the relationship.  Moreover, Nine has a significant history of involvement in the community and within the legal profession.  She has served as a mock trial coach and an officer on

the Marshall County Human Civil Rights Commission, participated in the Meskwaki Tribal Court, contributed to the local parent teacher association, and volunteered time in the Iowa Organization of Women Attorneys Advocacy mission at the local domestic shelter.

Though this was an isolated incident, we must note that Nine, like Johnson, represented Doe in a family matter, which is an aggravating circumstance. Additionally, it is an aggravating circumstance that Nine was initially evasive about her misconduct and did not admit regret. Yet, Nine did admit her wrongdoing soon after the Board filed its initial complaint and fully cooperated with the Board from that point on in the process.

Finally, though we are sanctioning Nine's misconduct now, we consider that it took place in 2011. At that time, our most recent attorney disciplinary case regarding a similar violation of rule 32:1.8(j) sanctioned an attorney to a thirty-day suspension of his license. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Monroe*, 784 N.W.2d 784, 790–92 (Iowa 2010). "We seek to 'achieve consistency with prior cases when determining the proper sanction.'" *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Crotty*, 891 N.W.2d 455, 466 (Iowa 2017) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 769 (Iowa 2010)). Thus, we agree with the commission that the appropriate sanction is the suspension of Nine's license to practice law for thirty days because it is consistent with our caselaw on this issue at the time Nine committed her misconduct.

Since *Monroe,* we have continued to suspend attorney's licenses for thirty days for violating rule 32:1.8(j) in situations similar to Nine's. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Jacobsma*, ___ N.W.2d ___, ___ (Iowa 2018); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Waterman*, 890 N.W.2d 327, 329–30 (Iowa 2017); *Johnson*, 884 N.W.2d at 775–76.

Nevertheless, we must note that our decision today is filed alongside another opinion that also sanctions an attorney for sexual relations with a client by suspending his license for thirty days. *See Jacobsma*, ___ N.W.2d ___, ___ (Iowa 2018). Nine is the fourth attorney in the last few years to violate rule 32:1.8(j). *See id.* at ___; *Waterman*, 890 N.W.2d at 329–30; *Johnson*, 884 N.W.2d at 775–76. Attorneys engaging in sexual relationships with clients is becoming a recurring problem, and it is becoming clear from our disciplinary cases involving violations of rule 32:1.8(j) that "our thirty-day suspension is not deterring attorneys from engaging in sexual relationships with clients." *Jacobsma*, ___ N.W.2d at ___ (Wiggins, J., dissenting). Sanctions in disciplinary cases serve many purposes, including deterrence. *See Monroe*, 784 N.W.2d at 790 ("It is important to deter other attorneys in similar circumstances from putting their own self-interest ahead of those of the client, the very antithesis of a lawyer's professional duty."). In the future, we may need to implement harsher sanctions to deter attorneys from engaging in sexual relationships with clients.

## V. Conclusion.

We suspend Nine from the practice of law without the possibility of reinstatement for thirty days. This suspension applies to all facets of the practice of law as provided in Iowa Court Rule 34.23(3), and Nine must notify all clients as outlined in Iowa Court Rule 34.24. Costs are taxed to Nine pursuant to Iowa Court Rule 36.24(1). Nine shall be automatically reinstated at the conclusion of the thirty-day suspension period if she has paid all costs unless the Board objects. *See* Iowa Ct. R. 34.23(2).

**LICENSE SUSPENDED.**

All justices concur except Wiggins, J., who concurs specially, and Hecht, J., who takes no part.

#18–1582, *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Nine*

**WIGGINS, Justice (concurring specially).**

In *Iowa Supreme Court Attorney Disciplinary Board v. Jacobsma*, ___ N.W.2d ___, ___ (Iowa 2018), I dissented and thought we should suspend Jacobsma's license indefinitely with no possibility of reinstatement for three months.[1] *Id.* at ___ (Wiggins, J., dissenting). Additionally, before reinstatement, I would have required him to obtain counseling and provide this court with a report showing he is no longer at risk to engage in sexual relationships with clients. *Id.*

I stated the reason for my dissent as follows:

> Jacobsma is the third attorney in the last few years to violate rule 32:1.8(j). *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Waterman*, 890 N.W.2d 327, 329–30 (Iowa 2017); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Johnson*, 884 N.W.2d 772, 775–76 (Iowa 2016). In *Waterman, Johnson,* and *Monroe,* and we suspended the attorney's licenses for thirty days.

> A sanction in a disciplinary case serves many purposes. Three of those purposes are deterrence, protection of the public, and maintaining the reputation of the bar as a whole. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Mathahs*, 918 N.W.2d 487, 494 (Iowa 2018). We decided the *Waterman* and *Johnson* cases over seven months before Jacobsma had sexual relations with his client. Obviously, our thirty-day suspension is not deterring attorneys from engaging in sexual relationships with clients.

*Id.* (citations omitted).

Here, Melissa Nine's conduct occurred after we decided *Monroe,* but before we decided *Waterman* and *Johnson.* Thus, the deterrent rationale

---

[1] If we suspend an attorney's license for a period not exceeding sixty days, we may reinstate an attorney's license without the need for the attorney to file an application for reinstatement. Iowa Ct. R. 34.23(2). If the suspension exceeds sixty days, the attorney must file an application for reinstatement. *Id.* r. 34.25.

is inapplicable to her situation. However, Nine's conduct shows an attorney engaging in sexual relationships with his or her clients is a growing problem that must stop. The only way to stop it is with stricter sanctions.